# CHARLESTON. .

## BARRICKMAN *v.* MARION OIL CO.

Submitted Sept. 13, 1898.—Decided Dec. 14, 1898.

1. NEGLIGENCE—*Natural Gas—Degree of Care.*

   A person or corporation engaged in furnishing natural gas to stoves, heaters, pipes, etc., for purposes of domestic light, heat. and fuel in a dwelling house, is bound to exercise such care, skill, and diligence in all its operations as is called for by the delicacy, difficulty, and dangerousness of the nature of the business, that injury to others may not be caused thereby; that is to say, if the delicacy, difficulty, and danger are extraordinarily great, extraordinary skill and diligence is required.   (p. 647).

2. NEGLIGENCE—*Natural Gas—Pressure of Gas—Damages.*

   If the defendant, so furnishing such gas, negligently and carelessly suffer and permit a greater amount of pressure of said gas to be furnished than is reasonably proper for said purpose, by reason whereof the house or building being so furnished is consumed or injured by fire, resulting from such negligence, the defendant is liable in damages for such loss.   (p. 647).

3. NEGLIGENCE —*Natural Gas — Defective Appliances—Proximate Cause—Damages.*

   If such defendant suffer and permit its regulators or other appliances to be and remain for an unreasonable time in such condition that they do not control the amount and pressure of gas so furnished, so that more than a safe and proper amount of gas is so furnished, the defendant is guilty of negligence, and liable in damages for injuries proximately caused by such negligence. (p 647).

4. NEGLIGENCE—*Natural Gas—Proximate Cause.*

   If such injury is the natural consequence of such negligence, and such as might have been foreseen and reasonably anticipated as the result of such negligence, then such negligence must be regarded as the proximate or direct cause of the injury, in the absence of intervening negligence. (p. 648).

5. NATURAL GAS—*Pressure of Gas—Fire—Inference*.

The mere fact that a building so furnished with gas was set on fire from the gas is not sufficient to justify the inference that an increased pressure of gas caused the fire.  (p. 648).

6. EVIDENCE—*Natural Gas—Pressure of Gas*.

In the trial of an action against a corporation so furnishing natural gas to a dwelling house, for damages for causing the destruction of such house by fire by negligently permitting too great a pressure of gas, it is not competent to prove by a witness the bare fact of what pressure the gauge of another gas company usually indicated.  (p. 643).

Error to Circuit Court, Monongalia County.

Action by Franklin Barrickman against the Marion Oil Company.  Verdict for plaintiff, and defendant brings error.

*Reversed.*

A. B. FLEMING and U. N. ARNETT, for plaintiff in error. COX & BAKER, for defendant in error.

MCWHORTER, JUDGE :

Franklin Barrackman brought his action of trespass on the case in the circuit court of Monongalia County against the Marion Oil Company, claiming damages for the destruction of a dwelling house, owned by him, by fire, occasioned by the negligence of the defendant in furnishing natural gas at said house for domestic purposes. On the 18th of February, 1896, defendant appeared, and demurred to the declaration, and to each count, in which plaintiff joined, and of which the court took time to consider.  On the 24th of the same month the court overruled the demurr, and the defendant pleaded to the general issue.  Plaintiff filed an amended declaration, when defendant again demurred to plaintiff's whole declaration, and to each count, which demurrers were overruled by the court, and defendant entered its plea of not guilty to both the declaration and the amended declaration.  A jury was duly impaneled, the case tried, and on the 20th of February, 1897, the jury rendered a verdict for plaintiff, and assessed his damages at one thousand dollars.  Defendant moved the court to set aside the verdict, and grant it a new trial; because the verdict was contrary to the law and the evidence; for permit-

ting improper evidence to go to the jury; for rejecting proper and material evidence offered by defendant; because the court gave several improper instructions on behalf of the plaintiff, and rejected and refused to give proper instructions offered by defendant, and in not giving instructions asked for by defendant in the form as prepared by defendant, and in modifying and making changes therein and additions thereto, and in giving them in such changed and modified form; which motion to set aside the verdict and grant a new trial was overruled and denied, and defendant excepted, and the court entered a judgment on said verdict against the defendant. Defendant took nine several bills of exceptions, which were severally signed, sealed and made a part of the record. The defendant applied for and obtained a writ of error, assigning as error the overruling of the demurrers to the declaration, and the amended declaration, and to each count; the permitting of improper evidence on behalf of plaintiff to go to the jury, as set out in bills of exceptions 5, 6, 7, 8 and 9; in giving plaintiff's instructions, and each of them, and in refusing defendant's instructions 3, 4, 5, 6, 7, 8, 9, 10, 11, 12 and 13, and each of them; and in refusing to give defendant's instruction No. 8 in the form prepared and requested by defendant, and in amending the same by making addition thereto by the court, and in giving same to the jury in the form as shown by bill of exceptions No. 4.

It is claimed that the demurrer to the declaration and to each count should have been sustained. There are three counts, two in the original and one in the amended declaration; and it is claimed by appellant that these counts are inconsistent (especially the one in the amended declaration) with those contained in the original declaration. In the latter (the original) it is averred that the dwelling house destroyed was the property of the plaintiff, and makes no mention of the fact that it was occupied, or in possession of a tenant or agent. In the amended declaration it is averred to be the property of and owned by plaintiff, while it is in the possession of one Milton Rinehart, as the lessee thereof, and from the plaintiff. It is no less the property of plaintiff, being in the possession of plaintiff by his tenant, than if the possession was held by him in person, and

the third count, or amended declaration, is simply to show the manner of the possession of the owner of the property, and is an eminently proper count. It is insisted that because it is averred, in substance, in all the counts, that it was the duty of defendant to control and regulate the quantity and pressure of gas in such manner that only such quantity and pressure as was necessary for fuel and domestic heat for said dwelling house should be furnished, the demurrers should have been sustained that the degree of diligence set forth in each count is greater than is required by law. Appellant says that: "If it can be claimed that because natural gas is a very dangerous substance, etc., and that, under certain circumstances, more than ordinary care can be required of a person or a company furnishing it, such a rule would not apply in this case, as it is shown the appellant only had what is known as a 'high pressure line' for its own use, and that the appellee and a few other householders in a small village were allowed to connect therewith for their own accommodation by means of their own gas line, called a 'service line,' and which was as much a 'gas line' as was the appellant's main." This may all be well said in the course of the trial on the merits of the case, but not on demurrer. It nowhere appears in the declaration that defendant had only what is known as a "high pressure line" for its own use, and a few householders connected with it for their own accommodation. The theory of the declaration is that defendant was in possession of certain wells producing natural gas, and was engaged in the business of furnishing gas through its pipe lines to consumers for fuel and domestic heating purposes for consideration, and it is averred that it was so furnishing such gas to the said dwelling house, the property of said plaintiff, under contract for valuable consideration, and, being so engaged, it was the duty of defendant to properly control and regulate the quantity and pressure of the said natural gas so far as same was necessary for fuel and domestic heat, which should be so furnished by it to and for said dwelling house; and then it is averred that on the day, etc., and at the county of Monongalia, the defendant wrongfully, negligently and unlawfully caused, suffered and permitted

the said natural gas to run, flow and pass out of and from the said wells producing natural gas, and out of and from the said lines of pipe, machinery and apparatus of which the defendant was possessed, in and into and through the said burners, heaters, stoves, grates, pipes, lines of pipe of plaintiff (which were averred to be in good repair, and fit for the purposes for which they were used) in so great and large quantities, and with so great a pressure, that the said burners, heaters, etc., of plaintiff were then and there forced open, broken, thrown apart, and burst, and by reason thereof the said great and large quantities of gas did escape and pass out of said pipes, burners, etc., in and into the said dwelling house, and was ignited, burned and exploded by the fires then and there lawfully kept, and being in the burners, heaters, etc., by which means the said house was burned and destroyed. "The object of the declaration is to set forth the facts which constitute the cause of action so that they may be understood by the party who is to answer them by the jury, who are to ascertain the truth of the allegations, and the court who is to pronounce judgment." Hogg, Pl. and Prac. § 140; *Berns* v. *Coal Co.*, 27 W. Va., 285; *Snyder* v. *Electrical Co.*, 43 W. Va. 661 (28 S. E. 733). The declaration in the case at bar is sufficient, and the court did not err in overruling the demurrers.

The second assignment is that the court erred in permitting the evidence mentioned in appellant's bills of exception numbered 5, 6, 7, 8 and 9, and in each of them, to go to the jury. That contained in bill No. 5 relates to certain questions asked witness Mrs. Berry, who lived some three hundred or four hundred yards from the house that was destroyed, and that was furnished with gas from the same pipe line. Witness was asked what the gas pressure was that day, at her home, about the time of the fire, and shortly before. She stated that it was very high; that she burned it in the cooking stove in the kitchen. "How high was it, and what did you do at your house, Mrs. Berry?" Answer: "When I went out the stove was red hot, and the wall was burning behind the stove." She was asked to describe to the jury how the gas was acting in the kitchen stove, and what it was doing. Answer: "Why, the gas— The stove

was red hot, and it was burnt behind the stove when I went out." She also said: "I first throwed water on the fire, I guess." Also certain testimony of E. O. Weidman, who was supplied with gas at his blacksmith shop, from the same line, and two hundred or two hundred and fifty yards from the Barrickman house that was burned, where he was asked: "How was the pressure at your house that day at the time, or shortly before, the fire?" Answer: "The gas, I think was stronger than usual." Also the same bill sets forth certain questions asked of witness Mrs. Rosa Sutton, who lived about one hundred yards from the Barrickman house, and was furnished gas from the same main, who was asked to state what the condition of the gas pressure was about the time, or shortly before, the house was burned. Answer: "It was very high. Was over the stove at work, and it was so high that it shook the stove lids, and I got out of the way of it. I turned it off, and then went to the other fires, and could not get it regulated, and I turned it off from the house. When I heard of the fire, I turned it off from the house." Plaintiff's counsel also propounded the four following questions to the same witness, and received the following answers, as set out in said bill No. 5: "Q. Where did you go from the dwelling? A. To the store. Q. How was it there? A. Just the same as in the house. Q. What was the condition of the gaslights in the store? A. Well, so high they blowed out. Q. When you went to the stove in the kitchen, how was the gas acting? A. I said that I was trying to regulate it in the stove, and went to the sitting room, and could not regulate it there, and came back to the stove, and turned it off from the grate." Also witness Charles Hall, minister of the Methodist Protestant Church, who lived about one hundred yards from the house that burned,—two houses between them. Witness' house was supplied with natural gas from the same main which furnished the Barrickman house, and he was asked: "What was the condition of the gas, and where were you?" Answer: "I was sick that morning, lying on a cot in the room where one of my fires was. I kept two fires, one in the stove and sitting room. My brother was with me. He was reading by the fire. Noticed the fire come on. I thought he didn't notice it, as

he was reading, and I spoke to him, and directed the fire to be turned lower. The pressure seemed to be higher than usual." Also, in the same bill, witness Jacob Barrickman, who lived one hundred and twenty-five or one hundred and fifty yards from the house that burned, and was supplied with gas from the same main line, and got home about half past 11 o'clock, day of fire, was asked: "Now, Mr. Barrickman, when you came home, what was the pressure in your house? A. Well, I guess when I came home, it seemed to be higher than usual. Q. I will get you to state to the jury what the pressure and condition of the gas was about the time the fire broke out in the Barrickman house, and shortly before. A. Well, I guess about eleven, or between eleven and twelve o'clock, it came on very strong, high pressure, stronger than it usually came on in the store building there." This testimony so excepted to refers to the condition of the gas as to the force and pressure at the time of the fire; no regulator on the main pipe intervening between the house burned and houses occupied or referred to by the witnesses. Appellant cites the case of *Emerson* v. *Gaslight Co.*, 3 Allen, 410, to sustain its position. That case is not applicable. It was for damages sustained by sickness introduced and suffered in a certain building by inhaling the gas that escaped into the house, but evidence that the inmates of another house were made sick in consequence of inhaling the gas that escaped into their house from the same defect in defendant's pipes was held inadmissible. "The evidence should be limited to the effect of the gas upon those who hold in common, and, under similar circumstances, inhaled it." *Hunt* v. *Gaslight Co.*, 8 Allen, 169. The condition and pressure of the gas in the neighboring houses at the time of the fire, there being no intervening regulator or hindrance to the force of the gas between the burned house and the other houses mentioned, would clearly indicate what it was at the house of plaintiff, and I see no valid objection to the answering of the questions.

Bill of exceptions No. 6 relates to the testimony of plaintiff, which refers to what took place between plaintiff and Charles J. Meeks, an employee of defendant, who had been asked by plaintiff to go to the house, and see if the

fixtures were safe ; complaint having been made about a leak of gas. Witness was asked and answered questions as follows: "Q. What was done in reference to the leak? A. He called my attention to the leak, and says, 'It is not safe,'—the way Charlie spoke to me; and, says I, 'Charlie, if it is not safe, I want you to take the gas out of the house until you know it is safe.' I told him to shut the gas out of our house until he knowed it was safe. Q. State whether or not it was repaired after that. A. It was repaired after that. Q. State whether or not Meeks approved of it after it was repaired. A. He did." Appellant insists that it owed no duty to appellee in reference to service line and gas fittings in the house and about the store, and that anything that Meeks did towards repairing them was done for and as the employe of appellee, or for his accommodation, and neither his acts nor declarations would bind appellant. Meeks testified that he was not the agent of defendant; that he was an employe, a laborer. It is true, he did so much of skilled work for defendant as to connect the service pipes with the main line, which was his only duty connected therewith; but, as alleged in the declaration, plaintiff was the owner of and put in the pipes, burners, etc., in his house, by himself, or his tenant, and it was his duty to keep the same in good order and repair. Meeks was only the agent of defendant in the line of his duties in its employ, and could not be called to the service of another without the consent of defendant, and it was improper to admit as testimony before the jury what Meeks told plaintiff in relation to the condition and repairs of the fixtures of plaintiff in his house and on his premises.

Bill of exceptions No. 7 relates to the evidence of E. O. Weedman, who was asked what the gauge at the regulator showed the pressure to be at the time of the fire, the house still burning, but nearly burned down, answered, "The hand was on the other side of the pin," and witness was asked "whether that gauge registered more than 180 pounds, or whether that was all it could register." He answered, "There was only 180 pounds marked on it." Witness had stated that once in a while for probably six months back he had gone to the register, and generally looked at what it stood at, and the best that he could

remember, outside of the one time that he had mentioned, he had seen it as low as fifteen pounds and as high as forty or fifty; and was asked and answered the following questions: "Q. From that time on up to the fire, when you examined the gauge, about what would the pressure stand at? A. Well, I have saw it as low, I guess. Q. Usually about what, ordinarily? You have seen it as low as that, and as high as that. About what was it usually? A. I suppose midway between, I reckon." To which exceptions were taken. Also the following questions and answers propounded to and given by witness Reuben Laytan (included in same bill of exceptions): "Q. Whether or not you examined it on that day, and what it registered? A. I went over and looked at it, after the fire was all over. Q. How shortly afterwards? A. It might have been two hours. Q. Mr. Laytan, was part of the house still burning? A. Yes, sir; there was fire there yet when I went there. Q. Mr. Laytan, how did that gauge register? A. Eighty pounds. when I went there." This examination of witnesses was on the matter of the flow of the gas, and referred to the register of defendant at its regulator; and, while it was a little after the fire,—an hour or two,—it was corroboration of witnesses who had testified to the fact of an extraordinary flow of gas at and immediataly before the time of the fire; and I think the testimony was competent, as well as that tending to show what the flow had been for some time before.

Bill of exceptions No. 8 relates to testimony of witnesses J. M. Gregg and Samuel McGara. Gregg, an employe of the Union Improvement Company, engaged in furnishing natural gas for fuel, light, and heating in the vicinity of Morgantown, had been employed in the office about four years, and was asked, "I will get you to state to the jury what that pressure is customarily," and, by the court, "What pressure is usually contained in gas lines that furnish gas for domestic use?" Answer: "I can only speak from the gauge in one office. All the examinations there I made of that gauge show from a half to a pound; sometimes a little lower than a half a pound, in cold weather." Witness McGara was asked and answered the following questions, to which exceptions were taken, as

shown in said bill No. 8: "Q. I will get you to state to the
jury what pressure is used by you, or is necessary to
operate an oil well,—what pressure without fire and with-
out steam. A. Well, 30 pounds pressure is enough to
pump a well. Q. Mr. McGara, from your experience in
the gas business, I will get you to state whether or not, in
your judgment, 30, or 40, or 50, or 60, or 80, or 180 pounds
of gas on the service line to dwelling house—say ¾ to ⅜
inch pipes—is dangerous. A. I would not let that go into
a house." These two witnesses were examined as ex-
perts. 'Gregg had been employed as bookkeeper in a gas
office, and, as stated by himself, could only speak from the
gauge in his office. Said he was not an expert; did not
claim to know what pressure would be dangerous. It is
not competent to prove, in this case, the bare fact of what
the gauge of some other gas company might show, unless
accompanied by scientific explanations or expert testimony
showing its relevancy ; hence the evidence of Gregg should
not have been admitted. Witness Samuel McGara had
large experience, and could be considered an expert in the
use of gas, as well as the handling and controlling of it, and
his testimony, excepted to, taken in connection with the
rest of his testimony, is not exceptionable, and it was
properly admitted.

The ninth bill of exceptions relates to the introduction
by plaintiff of a receipted gas bill made by defendant
against E. O. Weedman, dated January 1, 1896, for "the
use of gas as per contract to February 1st, 1896, $3." This,
I presume, was introduced to prove the fact that defendant
was furnishing gas for consideration. This bill was made
quite nine months after the injury complained of, and I
fail to see the relevancy of it, even if it were a transaction
between defendant and plaintiff, instead of a stranger. Its
admission was an error; yet, I think, harmless.

At the request of appellee, the court gave to the jury
the following instructions, numbered 1, 2, 3, 4, 6, 7. 8,
10, 11, 12, 13, and 14: "(1) The jury is instructed that a
corporation or person furnishing natural gas to the stoves,
heaters, burners, pipes, lines of pipe, machinery, or ap-
paratus of another, to be used for the purpose of domestic
heat and fuel in a dwelling house, is bound to exercise such

care, skill, and diligence in all its operations as is called for by the delicacy, difficulty, and dangerousness of the nature of its business, in order that injury may not be occasioned to others; that is to say, if the danger, delicacy, and difficulty is extraordinarily great, extraordinary skill and diligence is required.   (2) The jury is instructed that it was the duty of the defendant, as it is of all incorporated companies which are invested for their own profit and advantage with the great and important privilege of supplying a community with natural gas for private habitation, to be used as fuel and domestic heating, to exercise such care, diligence, and skill in the conduct of its business as is proportioned to the danger or risk to the property of others.   (3) The jury is instructed that if they believe from the evidence that at the time of the alleged injury and burning of the plaintiff's dwelling, mentioned in the declaration, the defendant, for a valuable consideration, was furnishing natural gas to the stoves, grates, burners, heaters, pipes, lines of pipe, machinery, or apparatus used for the purpose of fuel and domestic heat in and about said dwelling, and that the defendant negligently and carelessly suffered and permitted a greater amount of pressure of said gas to be furnished than is proper for said purpose, and that by reason thereof the plaintiff's said dwelling house was consumed by fire, then the jury must find for the plaintiff, and assess his damages occasioned by such burning. . (4) The jury is instructed that if they believe from the evidence that natural gas is a very dangerous, volatile, and explosive substance, then the person or corporation who furnishes it for valuable consideration to the stoves, heaters, burners, pipes, lines of pipe, machinery, or apparatus of another, for the purpose of fuel for domestic heat, must use such care, skill, attention, and diligence in order that no greater amount of pressure thereof shall be so furnished than is proper to be furnished, and in order to prevent injury to the person or property of others, as is proportioned to the danger of such substances."   "(6) If the jury believe from the evidence that natural gas is an extremely dangerous substance, and that the defendant, at the time of the burning alleged in the declaration, was furnishing, for a valuable considera-

tion, such gas to the heaters, burners, stoves, grates, pipes, lines of pipe, machinery, oɪ apparatus of the plaintiff, for the purpose of using such gas as fuel for domestic heat in and about the dwelling house mentioned in the declaration at the time of such burning, then it was the duty of the defendant under the law to use such care, diligence, and skill, both in providing proper machiney, regulators, and apparatus, work, labor, and attention, in order to control such gas, and the amount of pressure furnished to such dwelling house, as is in due proportion to the nature of the substance used. (7) If the jury believe from the evidence that the defendant, at the time of the alleged burning of the dwelling house of the paintiff, mentioned in the declaration, was, for a valuable consideration, furnishing natural gas to said dwelling house or to the machinery and apparatus used in and about said dwelling house, for the purpose of burning natural gas for domestic heat and fuel, as mentioned in the declaration, and that the said defendant at the time of such burning negligently failed to provide all such appliances, regulators, and machinery as were reasonably necessary to control the amount and pressure of the gas so furnished, then such failure is negligence on the part of the defendant, and it is liable for such damage to the property of another as was the direct result of such negligence. (8) The jury is instructed that if it believes from the evidence that at the time of the burning of the dwelling house of the plaintiff, alleged in the declaration, the defendant, for a valuable consideration, was furnishing to and for the machinery and apparatus in and about said dwelling house, for the purpose of domestic heat and fuel, a substance known as 'natural gas,' and that at the time of such burning the defendant permitted and suffered its regulator or regulators to be in such condition that it or they did not control the amount and pressure of the gas so furnished, and that it had permitted and suffered its regulators to remain in such condition for at least three or four months prior to the time of said burning, and that more than a safe and proper amount of gas was so furnished, then the defendant is guilty of negligence, and it is liable to the plaintiff for any damages occasioned to him directly caused by such negligence." "(10) The jury is

instructed that if they believe from the evidence that the defendant was guilty of the negligence or carelessness charged in the declaration, and that the injury complained of was the natural consequence of such negligence or carelessness, and such as might have been foreseen and reasonably anticipated as the result of such negligence or carelessness, then such carelessness or negligence should be regarded by the jury, as the proximate or direct cause of the injury. (11) The jury is instruced that the burden of proving contributory negligence rests with the defendant, but the jury may look to all the evidence offered by both parties to determine the question of contributory negligence. (12) The jury is instructed that remote negligence on the part of the plaintiff or. those occupying the house in the declaration mentioned at the time of the alleged burning will not prevent the plaintiff from recovering for an injury for the destruction of his property immediately caused by the negligence of the defendant. (13) The jury is instructed that the negligence on the part of the plaintiff, in order to defeat of itself his recovery, must be a proximate cause of the injury. (14) The jury is intructed that the negligence of the plaintiff, Barrickman, or his tenant, Rinehart, in this case, which preclude a recovery, is where, in the presence of a seen danger, he omitts to do what prudence requires to be done under the circumstances for the protection of his property, or does some act inconsistent with its preservation. Where the danger is not seen, but merely anticipated, or dependent upon future events, such as the future continuance of the defendant's negligence, plaintiff is not bound to guard against it by refraining from his usual course, being otherwise a prudent one, in the management of his property and business." To which appellant excepted by bill of exceptions No. 2. The argument against the giving of most of these instructions is the same as that used on the demurrer. Appellant insists that under the averments of the declaration, as well as the instructions, too high a degree of care and diligence is required of appellant in the handling of the gas; that there is a proper rule for each case as it arises; and it is in-sisted that in this case it is that of ordinary care and diligence.

In *Berns* v. *Coal Co.*, 27 W. Va. 285 (Syl. point 7) it is held that : " 'Negligence' and 'ordinary care' are correlative terms. What constitutes ordinary care depends on the circumstances of each particular case. It is such care as a person of ordinary prudence would exercise under the circumstances." What are the circumstances of this particular case? Appellant was engaged in the business of transporting and furnishing to consumers an article of trade and traffic of the most delicate, explosive, and inflammable nature, and very dangerous, and the care and diligence of appellant must be commensurate with the danger incident to the handling of the commodity. Appellant cites *Bartlett* v. *Gaslight Co.*, 122 Mass. 209, to show that appellee's instructions 12, 13, and 14 especially were bad, where it was said: " The jury, in the main part of the charge, had been told that the burden of proof was on the plaintiff to show affirmatively 'that the injury was occasioned by the negligence of the servants of the defendant company, and that in no material degree did the negligence of the tenant of the plaintiff contribute to that injury. * * *. The question is, was either of these parties negligent or not? If either, which? * * * The plaintiff must satisfy you upon the whole evidence, by a fair preponderance of evidence, that he was in the exercise of such care as a prudent man might reasonably be expected to exercise under the circumstances, and that the explosion was caused by the negligence of the defendant.' The company is liable in damages 'if the plaintiff's tenant was in the exercise of due care.' " Instruction 12 was not proper to be given, because it was not applicable. In the very nature of the case at bar, as disclosed by the record, plaintiff's negligence, if guilty of any, was not remote, but proximate; and the instruction was misleading. No. 13 is the law in that case, as laid down by this Court in *Snyder* v. *Railroad Co.*, 11 W. Va. 14 (Syl. point 7), discussed by the Court on page 37. The nature of that case differs very materially in many respects from the case at bar, and I can scarcely see how it can be made to apply here, unless there should be added to it, "unless the danger was such as no prudent man ought to risk." With these qualifying words it might have been given. Appellee's instructions Nos. 3, 7, and 8

should not have been given, because "they present a certain hypothesis [the negligence of defendant], and make the case turn wholly on it, disregarding another hypothesis [contributory negligence] fairly arising on the evidence." *Industrial Co.* v. *Schultz*, 43 W. Va. 470 (27 S. E. 255, Syl. point 9); *McKelvey* v. *Railway Co.*, 35 W. Va. 500 (14 S. E. 261, Syl. point 3). Instruction No. 10 is subject to very much the same criticism, and should not have been given without adding to it, "in the absence of intervening negligence," or something to the same effect. The other instructions of appellee were properly given.

Appellant asked the instructions Nos. 1 to 13, inclusive, which (leaving out No. 8) are referred to in bill of exceptions No. 3, and are as follows: "(1) The plaintiff, in order to recover in this suit, must satisfy the jury by a preponderance of testimony that the defendant was guilty of negligence, and that such negligence caused the injury. (2) The mere fact that the house of the plaintiff was set on fire is not sufficient to justify the inference that an increased pressure of gas caused the fire. (3) If the jury believe from the evidence that the plaintiff and his tenant, Milton Rinehart, or either of them, had knowledge some time prior to the burning of the plaintiff's house that the pressure of gas in the defendant's lines was uneven and variable,—greater at some times than at others,—and if, by reason of such uneven and variable pressure, it was dangerous to use the gas from said line for lighting and heating the dwelling house owned by the plaintiff and occupied by Milton Rinehart, then the plaintiff was guilty of negligence in permitting the same to be used therein; and if the jury believe that the fire which destroyed said house was caused by an uneven and variable pressure of gas, he cannot recover damages against the defendant for the injuries sustained. (4) If the jury believe from the evidence that the plaintiff and his tenant, Milton Rinehart, or either of them, had knowledge, prior to the burning of said house, that the pressure of gas in defendant's lines was variable and uneven, and that the tenant left the gas burning in said house during his absence and the absence of his family therefrom, on the day and at the time of the so leaving of the gas burning during his and his family's

absence from the house, this was negligence on the part of the tenant, which negligence of the tenant is to be imputed to the plaintiff, and the plaintiff cannot recover in this action.   (5) If the jury believe from the evidence that at the time of the fire which destroyed plaintiff's house there was an unusual pressure of gas, as described in the declaration, and that said gas, with unusual force, came into the pipe and appliances and to the burners, valves, and fittings on the plaintiff's premises, and thus increased the quantity of gas where the same was to be consumed, yet the plaintiff cannot recover if the jury further believe from the evidence that the pipe, valves, fittings, and appliances placed on the plaintiff's premises for the purpose of conducting said gas from the defendant's line to said house were not in good order and repair, and were at the time of the fire unsafe for the use and consumption of said gas, and that by reason thereof the said gas escaped, or the quantity thereof being burned was increased, and caused the destruction of said house.   (6) If the jury believe from the evidence that the plaintiff's tenant, Milton Rinehart, was guilty of negligence in the placing or maintaining on said leased premises the pipe, valves, fittings, and appliances which made the connection to conduct said gas from defendant's main into the house on said leased premises in an unsafe condition, and in not keeping and maintaining said pipe, valves, fittings, and appliances in good order and repair, and in proper and safe condition for the use and consumption of the gas, and that by reason of which unsafe condition of said pipe, valves, fittings, and appliances said house was set on fire, and destroyed, by means of an explosion of said gas, or by means of an increased heat or the escape of gas, occasioned, in whole or in part, by such unsafe and defective pipe, valves, fittings, and appliances, the negligence of the tenant, Milton Rinehart, should prevent the plaintiff from recovering in this action, and the jury should find for the defendant. (7) If the jury believes from the evidence that, at the time of the fire which destroyed the plaintiff's house, Milton Rinehart, the plaintiff's tenant, was guilty of negligence in not keeping and maintaining pipes, valves, fixtures, and appliances placed on the premises of the said plaintiff for the purpose

of conducting the said gas from the defendant's main into the said dwelling house on said premises in good order and repair, and if the said negligence of the said tenant, in whole or in part, caused or occasioned the injury complained of and described in the declaration in this cause, the plaintiff cannot recover, and the jury should find for the defendant." "(9) If the jury believe from the evidence that the house of the plaintiff, described in the declaration, was by the defendant furnished and supplied with gas on the application of Milton Rinehart, the plaintiff's tenant, and that such gas was conducted from the defendant's main or gas line to said house by means of pipe, valves, fittings, and appliances laid and furnished by said tenant, with the consent of the plaintiff, and that pursuant to a promise made by said tenant that he, said tenant, would keep and maintain said pipe, valves, fittings and appliances necessary and proper for the safe use and consumption of said gas in good order and repair, and that the fire which consumed the plaintiff's house was caused by an explosion of the gas in said house, or by any other means resulting from the escape or leakage of said gas, or the negligent manner of taking care of or using the same after leaving the defendant's main, the plaintiff cannot recover, and the jury should find for the defendant. (10) If the jury believes from the evidence that the injury complained of by the plaintiff in his declaration resulted from a cause which neither the plaintiff nor defendant knew of, and of which the defendant could not, by the exercise of ordinary care and prudence, have foreseen or known, the injury would be the result of accident, and for which the defendant would not be responsible, and the jury should find for the defendant. (11) Only ordinary care and prudence was required of the defendant in the conduct of its business and in the management of the gas line described in the declaration, and, if the jury believes from the evidence that the defendant exercised ordinary care and prudence in the delivering of its gas through the pipe line into the service line of the plaintiff or his tenant leading to the house which was destroyed, then the plaintiff cannot recover for the injury complained of. (12) If the jury believes from the evidence that the defendant had upon its

gas line from which it delivered gas to the plaintiff for use in his house, gas regulators in good order and sufficient to control the pressure and quantity of gas, and that the plaintiff used ordinary care in having its gas line and said regulators inspected and kept in good working order and safe condition, and that said regulators were so inspected within an hour or less of the time of the accident complained of in the declaration, and found to be in good order, and working properly, and the gas properly regulated and controlled thereby, and that from some unknown cause said regulators, or one of them, after said inspection, and before said fire, became temporarily and suddenly obstructed in some unknown way, which caused them, or either of them, to cease work, or regulate said gas, and by reason of which the quantity and pressure of gas was enormously and suddenly increased to a high pressure, which occasioned the injury complained of in the declaration, the defendant is not responsible for such accident, and the plaintiff cannot recover in this action. (13) The jury is instructed that in this case negligence is the ground of the plaintiff's action, and that it therefore rests upon the plaintiff to trace the fault of his injury to the defendant, by proving negligence upon the part of the defendant, and for this purpose he must show the circumstances under which the injury occurred; and if from these circumstances so proven by the plaintiff, and from all the evidence, including the evidence of the defendant, it appears that the fault of the injury was mutual, or, in other words, that the negligence is fairly imputable to the plaintiff or his tenant, the plaintiff cannot recover."

Appellant's instructions Nos. 1 and 2 were given. As to Nos. 3 and 4, in my view of the case, they are too sweeping. It is a fact known to all who have any knowledge of natural gas that the pressure is uneven and variable, greater at some times than at others, which facts are also abundantly shown in the evidence in this case; and by reason of such variable pressure it is more or less dangerous to use it; and, if instruction No. 3 is proper to be given, contributory negligence would have to be presumed in every case of this character. I think it simply tends to confuse and mislead the jury; and, if No. 4 is proper, then in

no instance could a consumer leave his house with the gas turned on to any extent without being guilty of contributory negligence in case of destruction of his property from the gas. However, a majority of the Court holds No. 3 to be good, and that the same should have been given, and that No. 4 was properly rejected. As to instructions Nos. 5, 6, 7, and 9, there was evidence tending to prove that the fixtures of plaintiff, especially those connecting the gas with the stove where the fire originated, were not well put in, as shown by the evidence of Robert and Charles Barrickman, who did the work; that it was probably not a good job, or well done, and that Dr. Rinehart, the tenant, had notice thereof; and also tending to show that such fixtures were not in good order and repair, and were not safe. In view of the evidence in the case, said last-named instructions were improperly rejected. Appellant's instructions 10, 11, and 12 are drawn upon appellant's theory of "ordinary care" only being incumbent upon it, and were properly rejected as presented, and should not have been given unless "ordinary care" was so qualified in said instructions to be "such care as is required by the dangerous character of natural gas." Instruction No. 13 is the law as laid down by Cooly on Torts (page 803, side page 673). He says: "The plaintiff must show the circumstances under which the injury occurred, and if, from these circumstances, it appears that the fault was mutual, or, in other words, that contributory negligence is fairly imputable to him, he has, by showing them, disproved his right to recover;" and adds: "There is a legal presumption against negligence, upon which he is at liberty to rely, thus casting the burden of showing contributory negligence upon the defendant." The instruction is in consonance with plaintiff's instruction No. 11 "that the burden of proving contributory negligence rests with the defendant, but the jury may look to all the evidence offered by both parties to determine the question of contributory negligence"; and should have been given. *Gerity's Adm'x* v. *Haley*, 29 W. Va. 98, (11 S. E. 901,) and *Carrico* v. *Railway Co.*, 39 W. Va. 86, (19 S. E. 571, Syl. point 7).

Instruction No. 8, which is made the subject of bill of exceptions No. 4, is as follows; "(8) If the jury believe

from the evidence that the house of the plaintiff described in the declaration was by the defendant furnished and supplied with gas upon the application of the plaintiff's tenant, Milton Rinehart, and that such gas was conducted from the defendant's main or gas line to the said house by means of pipe, valves, fittings, and appliances laid and furnished by the said tenant with the consent of the plaintiff, and that such gas was furnished upon the promise of the said tenant that he would keep and maintain said pipe, valves, fittings, and appliances in good order and repair, the jury is instructed that it was the duty of the plaintiff, or his tenant, Milton Rinehart, to see that the pipe, valves, fittings, and appliances and fixtures on the premises of the plaintiff described in the declaration, and which conducted the gas from the defendant's gas line to the premises of the plaintiff, were kept in good order and repair, and in proper and safe condition for the use and consumption of gas on the premises and in the house of the plaintiff; and if the jury believes from the evidence that such pipes, valves, fittings, and appliances which made the connections necessary to conduct said gas from the defendant's gas line to said premises were not, at the time of the burning of the plaintiff's house, in good order and repair and safe condition for the consumption of such gas, and that the fire which destroyed the plaintiff's house was caused from gas, and that such fire was caused by escape or leakage of such gas, or the negligent manner of taking care of or using the same after leaving the defendant's main or gas line, the plaintiff cannot recover, even if the defendant was negligent as claimed by the plaintiff in his declaration.'' For the same reasons given above for granting instructions 5, 6, 7, and 9, this No. 8 should have been given as presented, and without the modification by the court as given.

For the reasons herein given, there is error in the judgment complained of, and the same is reversed and annulled, the verdict of the jury set aside, and the case remanded to the circuit court for a new trial to be had therein.

*Reversed.*