T. L. COX v. D. D. HINSHAW and LENA HINSHAW.

(Filed 20 November, 1946.)

**1. Deeds § 14a—**

Conditions in a deed requiring grantees to care for grantor during the remainder of his natural life and to provide a home for him are conditions precedent to the investment of title. In the present case the deed was put in escrow not to be delivered until the performance of these conditions.

**2. Deeds §§ 14a, 14b—**

Ordinarily, substantial compliance with conditions subsequent in a deed will suffice, while conditions precedent usually must be strictly observed, but where the conditions precedent require grantees to provide a peaceful home and take care of grantor for the remainder of his life, and thus involve human conduct over a considerable period of time, the rule of reason must perforce apply rather than the strict performance of definite acts and conditions.

**3. Deeds § 14a—**

In this case evidence of an altercation between grantor and grantees as shown by the evidence, *is held* to require the submission of the issue to the jury as to whether grantees had breached a condition precedent requiring grantees to care for and provide a peaceful, quiet and comfortable home for grantor during the remainder of his natural life, which condition was also made contractual by the joinder of the grantees in the execution of the deed.

**4. Same—**

Where a deed containing conditions precedent is placed in escrow under a separate agreement of the parties, the remedy of the grantor for condition broken is an action to rescind the contract of escrow and for the return of the deed to him, and not an action for the cancellation of the deed.

**5. Appeal and Error § 40i—**

Upon appeal from the granting of defendants' motion to nonsuit, the Supreme Court cannot pass upon the weakness or strength of plaintiff's evidence but only whether, taking it in the light most favorable to plaintiff, it is sufficient to raise an issue of fact for the jury.

Appeal by plaintiff from *Clement, J.,* at July Term, 1946, of Randolph.

Pursuant to an oral agreement, the plaintiff executed to the defendants a deed in fee simple to certain lands in Randolph County upon certain conditions set out in the deed. The defendants joined in the execution of the instrument, constituting it both a deed and a contract.

The conditions relate to the support of the grantor, furnishing him medical attention, the care and operation of a mill and ice plant situated

on the property, payment to the grantor of a specified portion of the net profits, and numerous other matters. As directly bearing on this controversy, the following may be quoted:

"1. The grantees herein, D. D. Hinshaw and Lena Hinshaw, his wife, are to move into the home of the grantor, T. L. Cox, and take over the running of said home, maintain and provide the said T. L. Cox with a peaceful, quiet and comfortable home during the remainder of his natural life, including subsistence, washing, fuel, doctor bills, hospital care, if needed, and all other things reasonably necessary for his care and comfort."

A clause in the deed provides for arbitration of any differences which might arise between the parties respecting the performance of the conditions.

The parties deposited the deed in escrow with the First National Bank of Asheboro, to be delivered to the defendants upon the death of the grantor, provided meantime they had performed the conditions named in the deed and contract.

The defendants moved into the home of the grantor sometime in September, 1944, and undertook performance of their duties as specified in the deed. The parties lived together in the home until September, 1945, when a disagreement having arisen between them, the plaintiff suggested to the defendants that either they or he should leave since conditions brought about by the defendants were no longer bearable; and contending that his action was caused by a breach of the conditions in the deed requiring the defendants to "maintain and provide said T. L. Cox with a peaceful, quiet and comfortable home during the remainder of his natural life," left the home and has since resided elsewhere. On 22 October following, he brought this action to cancel the deed because of the breach of the conditions therein. The case came on for trial at July Term, 1946, of Randolph Superior Court.

In view of the conclusion we have reached, it is necessary only to summarize the plaintiff's evidence relating to the obligations of the defendants, made a condition precedent to the deed, to maintain and provide for the plaintiff a peaceful, quiet and comfortable home during the remainder of his natural life, without special reference to other conditions claimed to have been broken.

Pertinent to this condition, the plaintiff testified on the trial: "The home provided by the defendants formerly was a happy and peaceful home part of the time, and part of the time it was not. A lot of stuff went along that I never said anything about. My table, where I kept my papers—they were tangled, or stacked up or piled up different. Gave me trouble. Lay them down and go off. These papers were newspapers and magazines. I told Mrs. Hinshaw I did not like my papers to be torn up, but my telling her this did not make any effect. . . . I

have my junk or scrap pile, good pieces of anything I want, lumber or blocks that I need around a place like that, and they used them and burned them; used up my stuff like that. I found this out several times since the Hinshaws came there. . . . Lena Hinshaw said that stuff was not any account; it was rotten. I said if it was rotten it would not do much good cooking. I went in the house and turned on my radio. In a few minutes her mother came to the door and said Lena (Mrs. Hinshaw) was crying. I asked her what she was crying about. She said what I said to her. I told her that I did not say anything to make anybody cry. Then they had supper ready. Mrs. Stout said for us to come to supper. While we were sitting at the table eating Lena did not come to the table."

The plaintiff testified that later Delbert Hinshaw "rared out on him and told him he couldn't talk that way to make her cry. Mr. Hinshaw got to talking and said we would mix. He was angry to some extent, it seemed like." Hinshaw made no demonstration of any kind. Did not get up.

Pursuing the conversation, after Mrs. Hinshaw came in, "She went to talking about the wood was no account. After they said I was no gentleman, I didn't like it, because I hadn't said anything out of the way, told them what I had said, it was a Fred Stanley proposition; he was the only person I had about me that burned up my stuff. We were talking there I expect thirty minutes. I said that I wasn't going to live in a fuss. I told Mr. and Mrs. Hinshaw if we couldn't live together in peace for them to leave; that I wouldn't live in a fuss, under any condition; if we couldn't live in peace and get along for them to just get out. After we talked a right smart, I told Mr. and Mrs. Hinshaw several things that wasn't kept like it should have been; I told them there was a scent around there somewhere. They suggested that it was a dead rat in my room. There was a baby there in the house and this old lady a grand aunt of Mrs. Hinshaw, Lidy Walker, who was sick. I have seen them throw clothes from the sick bed and diapers which the baby had used down the steps into the basement. These soiled clothes would stay in the basement until they were washed. They washed twice a week. The basement was directly under my room. The basement stairs went under the stairs that went upstairs. The door to the basement went right out of my door. I told them they were filthy; that I couldn't stand it, never had lived under such conditions. The throwing of these clothes into the basement had been going on for a month or so. The odor from these clothes was not so bad with me; I haven't got sensitive to smell; but I did smell this."

"I told them they didn't treat their mother, Mrs. Stout, like they should. I told them that they treated her like she was a slave. She did all the cooking, washing dishes and such as that. I told them that I

wasn't going to live in a fuss.  After I told them this Lena (Mrs. Hin-
shaw) said, 'Oh, just let it all go, let it all be over'; after they had given
me a run.  Mrs. Hinshaw was out of fix when she was talking to me,
until the last, when she wanted it all settled down.  She was mad, and
talked using a high, angry tone.  I left about four o'clock next morning
going to my brother's.  I had made arrangements the day before to start
to Florida.  I got up early and went to the car house.  Lena wanted me
to go to the house and get breakfast.  I told her I would get breakfast
when I got to my brother's at Greensboro."

Witness explained that prior to Mrs. Hinshaw's bit of crying and the
conversation with her husband about it, he had said that burning his
scrap was a Fred Stanley proposition; that Fred Stanley, who formerly
lived with him, was the only person who had burned his scrap.  Fred
Stanley was an ex-convict.

Plaintiff testified: "I told them if they could not live in peace to get
out; and if they didn't, I would, and I did . . . I saw Lena the next
morning before I left; she asked me to get breakfast; her attitude and
demeanor were perfectly friendly. . . . I never suffered for anything to
eat or keep comfortable with long. . . . They mistreated me by raring on
me, fussing and going on.  They did not rant on me except on one occa-
sion when I accused Lena of burning my wood.  They never had much to
say.  I left there because of what they said on that occasion."  "Since
that time I haven't given them any chance to be entirely cordial to me."
"That one time is when they broke the peace and quiet and threatened
me.  They had not done so until then; but sometimes one time is enough.
You get killed."

H. W. Clodfelter testified for plaintiff that he was present when
Hinshaw and plaintiff had the talk about Lena crying.  They had been
dividing up my money and the following occurred:

"Mr. Hinshaw looked over at Mr. Cox and said, 'Talt, what did you
make Lena cry for a while ago?'  He said, 'I didn't make her cry.'
Hinshaw said, 'You did.  Now that's my wife you were talking to, if
you class her as low down as Fred Stanley, if you ever do a trick like
that again, I'm going to get with you.'  Mr. Cox said, 'She is as low
down,' or 'It's a Fred Stanley proposition, and anybody that will pick
up scrap wood around the house and burn it'—I disremember just how
he did speak this—'Mighty low down character,' or something.  Mr. Cox
said he didn't have anything to take back.  He said, 'I ain't going to
take back anything; I said it, and I'm going to stick to it.'  That is all
Hinshaw said that I remember."

The defendants offered no evidence.

At the close of plaintiff's evidence defendants demurred thereto and
moved for judgment as of nonsuit, which was allowed.  Plaintiff ob-
jected and excepted.  From this judgment plaintiff appealed.

*J. G. Prevette and Horton & Bell for plaintiff, appellant.*
*H. M. Robins for defendants, appellees.*

SEAWELL, J.   The contention of the appellant that defendants had not provided for him a peaceful, quiet and comfortable home as required in the condition precedent to delivery of the deed, brings the appeal into a field of unusual difficulty and severely challenges the propriety of dealing with the standards involved—if indeed there are any standards except those that are relative and shifting—as a matter of law or legal inference.   The court below had the question whether an inference of a breach of the contract could be drawn from the evidence, and its negative answer passed that question to us; one which we may not decide as chancellors but with respect to appellant's right of trial by jury where there is evidence of the fact.

The conditions which the plaintiff claims were breached are conditions precedent to the investment of title and in fact the deed was put in escrow, not to be delivered until the full performance of those conditions.

Ordinarily, substantial compliance with the conditions subsequent in a deed will suffice, while it is said that conditions precedent must be "strictly, literally, and punctually performed."   36 C. J. S., page 488, sec. 151.   There are obviously some situations arising in which such a rule cannot be rigidly enforced; where, for instance, the conditions relate to conduct of the grantee over a considerable period of time, to which the rule of reason must apply rather than to a performance of a more definite nature such as the payment of purchase price within a certain time, or the like.

But, however liberally we may construe the conditions imposed upon the defendants in the case at bar and their conduct with respect to it, we are hardly relieved of the necessity of determining whether the final appraisal of the conduct of the defendants in performing the conditions was a matter for the court or the jury.

No doubt the trial court sustained a demurrer to the evidence on the theory that, taking everything into consideration, the matters of which plaintiff complained, admitting them to be true, were too trivial to upset a solemn deed, constituted a minor family disagreement, evanescent in character, and which a proper exercise of forbearance and tolerance on both sides would have straightened out without serious interruption of the peace, quietude and comfort of the home.   Reflecting that view here, counsel for the appellees reminds us that *"de minimis non curat lex."* But how small or wanting in significance are the facts in evidence, by what standard are they to be weighed, and who shall hold the scales?

What is a home?   What measure of peace, quiet and comfort within its precincts was in contemplation of the parties signing the contract?

What tare is the court permitted to make as a matter of law before submitting the body of the offending to the jury? What consideration must be given to age and condition of the plaintiff and such allergy as he may have had to a threatened chastisement on his own premises? To what extent may physical, cultural and moral conditions be considered as affecting the peace, quiet and comfort of a home to be created by the joint living of the contracting parties?

Certainly, people are not perfect; and the plaintiff, appellees contend, could not expect "all this and Heaven too" under the known conditions with reference to which they contracted. But, before we apply the analogy, let us remember that the ordinary home is integrated by family ties, not by contract. In such a home the sanctions for peace, quiet and comfort are not forfeiture of a property right but loss of intangibles of far greater importance. Fortunately such a home may be retrieved from a bad situation by a lot of living and forgiving. But the person who is furnished a home by contract is not required to forgive or condone a breach of the condition when it occurs; he may look to his contract.

Referring to the incidents which occurred the day and night before the plaintiff sought residence elsewhere, we could hardly say that there was no substantial evidence tending to show that the condition in the home, temporarily at least, was wanting in peace, quiet and comfort. How often the same thing must be repeated to amount to a breach of condition cognizable in law brings up the question of a quantitative standard of evidence which the Court has hitherto thought it is not competent to determine. The accumulation of nothings can never amount to evidence and evidence need not be cumulative to demand its submission to the jury.

These are only a few of the considerations that incline the Court to the view that a solution of the factual problems involved here peculiarly calls for the offices of the jury rather than those of the Court.

It is proper to say here that in the opinion of the Court the plaintiff has mistaken his remedy, if upon a new trial he is able to make good on the facts. The deed sought to be canceled has never been delivered and is not effective without such delivery. By a separate contract between the parties it was put in escrow with the First National Bank of Asheboro, to be delivered upon the death of the grantor provided the holder of the escrow deemed the conditions to have been satisfactorily performed. Upon breach of the conditions,—if such breach is found to have taken place,—the plaintiff would be entitled to a rescission of the contract of escrow and return to him of his deed. Nevertheless, disregarding the prayer for relief, he would be entitled to whatever remedy might be appropriate to the facts alleged and proved.

On this appeal we are not concerned with either the weakness or the strength of plaintiff's evidence but only whether, taking the evidence in

its most favorable light, legitimate inferences in his favor may be drawn from it. Applying that principle, we think there was error in taking the case from the jury.

The judgment of the court below in sustaining the demurrer to the evidence and rendering judgment as of nonsuit is

Reversed.