NEALIE COOPER GRAHAM v. NORTH CAROLINA BUTANE GAS CO.,
and
JAMES NEAL GRAHAM v. NORTH CAROLINA BUTANE GAS CO.

(Filed 12 April, 1950.)

**1. Trial § 19—**

The competency, admissibility and sufficiency of the evidence are for the court; the credibility, probative force and weight of the testimony are for the jury.

**2. Trial § 21—.**

A motion to nonsuit challenges the legal sufficiency of the evidence to take the case to the jury, admitting for the purpose the truth of all facts in evidence tending to sustain plaintiffs' claim and every reasonable inference therefrom.

**3. Trial § 23a—**

Compulsory nonsuit cannot properly be entered if the facts are in dispute, or if the testimony in relation to the facts is such that different conclusions may reasonably be reached thereon.

**4. Master and Servant § 22a—**

In order to hold the employer liable for the negligence of the employee it must be made to appear (1) that the employee was negligent, (2) that the negligence of the employee was the proximate cause of the injury, and (3) that the relation of master and servant existed between the employer and the employee at the time of and in respect to the very transaction out of which the injury arose.

**5. Gas § 1—**

Fuel gas is an inherently dangerous substance and a merchandiser thereof must use that degree of care which an ordinarily prudent person would exercise under like circumstances in managing such a dangerous agency.

**6. Gas § 2—**

A gas company is liable in damages for negligence in failing to employ reasonable care to prevent the escape of gas when such failure is the proximate cause of injury, and this rule applies to its delivery of gas to the building of a customer.

**7. Same—**

A gas company in delilvering gas to a customer is entitled to assume, in the absence of notice to the contrary, that fixtures which it did not install and over which it has no control, are sufficiently secure to permit gas to be introduced into the building with safety; but if it becomes aware that gas is escaping from such fixtures, it has the duty to shut off the gas supply until further escape from the fixtures can be prevented, and if it continues to transfer gas into the fixtures after it learns that gas is escaping therefrom, it does so at its own risk, and is liable for any injury proximately resulting therefrom.

**8. Same—Evidence held sufficient to support finding that deliveryman was negligent in discharge of very duty he was entrusted to perform by gas company.**

Evidence that defendant gas company's deliveryman, while replenishing the supply of gas in plaintiffs' storage tank, was advised that gas was leaking from plaintiffs' fixture, that the driver thereafter continued to deliver the amount of gas ordered into the storage tank and then went into plaintiffs' kitchen with a flame in his hand to light the pilot light, and thus prevent the further escape of gas, *is held* sufficient to overrule the gas company's motion to nonsuit in an action to recover for injuries resulting from the ensuing explosion and destruction of plaintiffs' property by fire, since it is sufficient to warrant the findings that the driver was negligent in the discharge of the duty entrusted to him by defendant to deliver the gas, and that such negligence was the proximate cause of the injury.

STACY, C. J., took no part in the consideration or decision of this case.

APPEALS by plaintiffs from *Williams, J.,* at September Term, 1949, of SAMPSON.

The plaintiffs, Nealie Cooper Graham and James Neal Graham, brought separate actions against the defendant, the North Carolina Butane Gas Company, a corporation engaged in selling and distributing fuel gas, claiming damages for the total destruction of a dwelling house and its contents by a fire alleged to have been occasioned by the negligence of the defendant in supplying gas to such house for cooking purposes. The two actions were tried together by consent.

The dwelling was located near Clinton in Sampson County, North Carolina. It belonged to Nealie Cooper Graham, but was occupied by her son, James Neal Graham, and his immediate family. The kitchen equipment included a gas range, which had four gas burners and a pilot light, and which was designed to use butane gas for fuel. The stove was supplied with gas by means of a service pipe connecting it with a storage tank situated in the yard adjacent to the house. This storage tank was fitted with a stop-cock or cut-off valve for stopping the flow of gas through the pipe to the range. The cooking system had been installed two years previously, had been in constant use since that time, and had always operated in an effective manner. On 13 April, 1948, one Lee, the defendant's employee, whose duty it was to deliver gas to the defendant's customers, drove the tank truck of the defendant to the premises of the plaintiffs for the purpose of transferring 50 gallons of butane gas from such tank truck to the storage tank, which was then empty.

Two witnesses for plaintiffs, to wit, James Neal Graham and his wife, gave virtually identical evidence as to ensuing events. Arranged in its chronological order, the material testimony of the former was as follows:

"On April 13, 1948, Mr. Lee delivered some butane gas to the storage tank. That was the first gas that I ever bought from the defendant.

Mr. Lee had never seen the house or stove before. The pilot light stays on all the time that there is gas in the tank. The proper thing after the gas is put back in there is to light the pilot light, and if you don't light it the gas from the tank will escape in the kitchen. If Mr. Lee had filled up the tank, and I had failed to light the pilot light the kitchen would have gotten full of gas. Before Mr. Lee connected his hose to the tank, he told me to go in the house, and cut off all the units and light the pilot light. I went in the house. All the burners were off. I tried to light the pilot light, but it didn't light. I could smell gas in the kitchen. When I tried to light the pilot light, it flared up to the ceiling, and I came out in the yard where Mr. Lee was putting gas in the tank, and told Mr. Lee that the pilot light was blowing gas to the ceiling, that I could smell it and could hear it hissing through that jet in the pilot light, and that something was wrong with the stove, and I didn't know what to do about it. Mr. Lee hadn't finished putting gas in the tank, and he told me to wait until he finished putting the 50 gallons in, and that he would go in there and check it for me. I stayed by him until he finished putting gas into the tank. After he finished putting gas into the tank, he went into the house, and asked me to show him how the pilot gas blew off. I tried to show him, and it did the same thing. The light flared up, but it didn't stay lit. Then Mr. Lee took a screwdriver and a cigarette lighter and tried it, and the pilot light did the same thing with him. He tried to adjust the adjustment on the light, and it blew and flared up higher at the ceiling. My wife was standing there, and she asked Mr. Lee if he didn't think that he ought to cut it off on the tank until it could be fixed, that there was something wrong. A little spark jumped from the pilot light to the master burner, and he asked my wife if she saw that, and she said she did. Then Mr. Lee reached over and turned the master burner on, and the kitchen exploded in flame, and there was fire all over the kitchen. When he turned the master burner on, Mr. Lee had a cigarette lighter in his hand lit. After the fire broke out we all ran out of the kitchen, and Mr. Lee cut the valve off at the tank on the outside. The fire spread across the back porch, and through the main hallway of the house, and burned the house and all of the personal property in the house."

The plaintiff, James Neal Graham, made this admission on cross-examination: "The purpose of my sending for Mr. Lee . . . was to bring some butane gas. I did not send for the Butane Gas Company or Mr. Lee to come and fix the stove. As far as I knew, there was nothing wrong with the stove." Moreover, the defendant elicited this testimony from the witness Mrs. James Neal Graham: "I knew that Mr. Lee was a truck driver, delivering the gas, but I did not know whether he was a mechanic.

GRAHAM *v.* GAS CO.

I first asked him if he could fix it, and he said no, but he went into the house to do it. He went in there to help do what he could, I reckon."

When the plaintiffs had introduced their evidence and rested, the court allowed motions of the defendants for compulsory nonsuits under G.S. 1-183, and entered judgments accordingly. The plaintiffs excepted and appealed, assigning these rulings as error.

*A. McL. Graham, F. Ogden Parker, and Warlick & Ellis for plaintiffs, appellants.*

*Butler & Butler for defendant, appellee.*

ERVIN, J. On the trial of an action, the competency, admissibility, and sufficiency of the evidence are for the court while the credibility of the witnesses, and the probative force and weight of the testimony are for the jury. *Coach Co. v. Lee,* 218 N.C. 320, 11 S.E. 2d 341.

A motion for a compulsory nonsuit under the statute now codified as G.S. 1-183 challenges the legal sufficiency of the evidence to take the case to the jury and support a verdict for the plaintiff. *Ballard v. Ballard,* 230 N.C. 629, 55 S.E. 2d 316; *Lea v. Bridgeman,* 228 N.C. 565, 46 S.E. 2d 555; *Ward v. Smith,* 223 N.C. 141, 25 S.E. 2d 463. When the defendant moves for a compulsory nonsuit, he admits, for the purpose of the motion, the truth of all facts in evidence tending to sustain the plaintiff's claim; and the plaintiff is entitled to have the court, in ruling on the motion, to give him the benefit of every favorable inference which the testimony fairly supports. *Higdon v. Jaffa, ante,* 242, 56 S.E. 2d 661; *Hughes v. Thayer,* 229 N.C. 773, 51 S.E. 2d 488; *Reid v. Coach Co.,* 215 N.C. 469, 2 S.E. 2d 578, 123 A.L.R. 140. A motion for a compulsory nonsuit cannot rightly be allowed unless it appears, as a matter of law, that a recovery cannot be had by the plaintiff upon any view of the facts which the evidence reasonably tends to establish. 53 Am. Jur., Trial, section 299. This being true, the court cannot properly enter a compulsory nonsuit and thereby withdraw the case from the jury if the facts are in dispute, or if the testimony in relation to the facts is such that different conclusions may reasonably be reached thereon. *Cox v. Hinshaw,* 226 N.C. 700, 40 S.E. 2d 358; *Phillips v. Nessmith,* 226 N.C. 173, 37 S.E. 2d 178; *Newbern v. Leary,* 215 N.C. 134, 1 S.E. 2d 384; *Lithograph Corporation v. Clark,* 214 N.C. 400, 199 S.E. 398.

The plaintiffs seek to hold the defendant liable under the doctrine of *respondeat superior* for injury to their property allegedly caused by the negligence of Lee, the driver of the tank truck. In consequence, the appeals from the compulsory nonsuits raise the question whether the evidence introduced by plaintiffs at the trial is sufficient to establish these three propositions: (1) That Lee was negligent; (2) that the negli-

gence of Lee was the proximate cause of injury to the property of the plaintiffs; and (3) that the relation of master and servant existed between the defendant and Lee at the time of the injury, and in respect to the very transaction out of which the injury arose. *Carter v. Motor Lines,* 227 N.C. 193, 41 S.E. 2d 586; *Walker v. Manson,* 222 N.C. 527, 23 S. E. 2d. 839.

The defendant maintains that the testimony negatives liability on alternative grounds. The defendant asserts initially that the plaintiffs owned, maintained, and controlled the gas range, and by reason thereof were responsible for its condition; that the fire and the resultant injury were caused by a leak in the gas range occasioned by the neglect of the plaintiffs to keep the range in repair, or by the failure of James Neal Graham to turn off the master burner; and that in consequence the testimony actually disproves the allegation of the plaintiffs that the destruction of their property was the result of the negligence of Lee. It is noted, in passing, that the suggestion that James Neal Graham failed to turn off the master burner runs counter to his positive testimony that "all the burners were off," which must be taken to be true in determining the propriety of the compulsory nonsuits. The defendant insists secondarily, however, that the evidence fails to make out a case for plaintiffs under the doctrine of *respondeat superior,* even if it be adequate to sustain a finding that the loss of the property was the proximate result of negligence on the part of Lee. This position is predicated on the theory that the testimony compels the single conclusion that Lee was employed by the defendant merely to deliver gas into the storage tank of the plaintiffs; that Lee stepped aside from that business to engage in an unauthorized act, *i.e.,* to repair the gas range of the plaintiffs; that any negligent conduct on Lee's part occurred in the performance of such unauthorized act; and that in consequence the relation of master and servant did not exist between the defendant and Lee in respect to the transaction out of which the injury arose, *i.e.,* the repair of the gas range.

The trial court deemed these views to be valid, and dismissed the actions on compulsory nonsuits. In so doing, it committed error, notwithstanding that the plaintiffs owned and maintained the gas range, and that Lee was authorized by the defendant merely to make delivery of its gas.

It is a scientific fact "that gas ordinarily used for fuel is so inflammable that the moment a flame is applied it will immediately ignite with an instant explosion, if it is present in any considerable volume." *Holmberg v. Jacobs,* 77 Or. 246, 150 P. 284, Ann. Cas. 1917 D, 496. This being true, such gas is a dangerous substance when it is not under control. For this reason, the law, which is ever heedful of realities when it formulates rules to govern the conduct of men, has established these principles

in respect to the liability of gas companies for injuries resulting from escaping gas:

1. A company, which deals in gas as an article of merchandise, must use reasonable care to avoid injury to others by its escape. Reasonable care is that degree of care which an ordinarily prudent person would exercise under like circumstances in managing such a dangerous agency. *Barbeau v. Buzzards Bay Gas Co.,* 308 Mass. 245, 31 N.E. 2d 522; *Moran Junior College v. Standard Oil Co. of California,* 184 Wash. 543, 52 P. 2d 342; *Barrickman v. Marion Oil Co.,* 45 W. Va. 634, 32 S.E. 327, 44 L.R.A. 92; 42 Am. Jur., Gas Companies, section 24. A gas company is answerable in damages under the principles governing liability for negligence if it fails to employ reasonable care to prevent the escape of gas, and if its failure in such respect is the proximate cause of injury to the person or property of another. 24 Am. Jur., Gas Companies, sections 20, 21, 22; 38 C.J.S., Gas, sections 40, 41, 43.

2. The general rule requiring a gas company to use reasonable care to prevent the escape of gas applies to its delivery of gas into the building of a customer. *Manning v. St. Paul Gaslight Co.,* 192 Minn. 55, 151 N.W. 423, L.R.A. 1915, 1022, Ann. Cas. 1916E, 276; 38 C.J.S., Gas, section 42.

3. Where a gas company does not install the gas fixtures in a customer's building and does not own them and has no control over them, it is in no way responsible for their condition or for their maintenance. Consequently, it has the right to act upon the assumption in the absence of notice to the contrary that such fixtures are sufficiently secure to permit gas to be introduced into the building with safety, and is not liable for an injury caused by a leak therein, of which it has no knowledge. *Triplett v. Alabama Power Co.,* 213 Ala. 190, 104 So. 248; *Milligan v. Georgia Power Co.,* 68 Ga. App. 269, 22 S.E. 2d 662. See, also, these annotations: 138 A.L.R. 871; 90 A.L.R. 1082; 47 A.L.R. 488; 29 A.L.R. 1250; and 25 A.L.R. 262.

4. Where a gas company, which is engaged in supplying gas to a customer's building, becomes aware that such gas is escaping from the gas fixtures on the premises into the building, it becomes the duty of the gas company to shut off the gas supply until the further escape of gas from the fixtures can be prevented, even though the fixtures do not belong to the company and are not in its charge or custody. If the gas company continues to transfer gas to the fixtures on the premises after it learns that the gas is escaping therefrom, it does so at its own risk, and becomes liable for any injury proximately resulting from its act in so doing. *Clare v. Bond County Gas Co.,* 356 Ill. 241, 190 N.E. 278.

This fourth proposition finds emphatic expression in *Windish v. People's Natural Gas Co.,* 248 Pa. 236, 93 A. 1003, and *Phillips v. City of*

*Alexandria,* 11 La. App. 228, 123 So. 510. In the *Windish Case,* the Supreme Court of Pennsylvania said: "We fully agree with the suggestion that the defendant company, even if the duty to repair the service line did not devolve upon it, could not continue to furnish gas through that service line if known to be defective without making itself liable in damages for injuries resulting therefrom"; and in the *Phillips Case,* the Court of Appeal of Louisiana declared: "Natural gas is an explosive and a highly dangerous substance, so that the city in handling it must be held to a degree of care commensurate with the danger. In view of that fact, if the employees of the city knew at the time the gas was turned into the service pipe at the curb that there was an uncapped gas opening in the house through which gas would escape, or if they became aware after it was turned on that gas was escaping into the house through such opening, and made no effort to stop the flow and protect the occupants of the house, the city, we think, would be liable, even though it did not install the plumbing or the fixtures in the house, and did not at any time connect with the piping or disconnect therefrom any plumbing fixtures."

When the evidence is taken to be true and is interpreted favorably to plaintiffs in the light of these legal principles, it is adequate to support these conclusions:

When the defendant employed Lee to deliver the 50 gallons of gas, it necessarily delegated to him the performance of its duty to use reasonable care to prevent the escape of such gas during the course of delivery. While Lee was transferring the gas from the tank truck of the defendant to the storage tank of the plaintiffs, he acquired knowledge that the gas was escaping through the gas-range of the plaintiffs, and was concentrating in heavy volume in the kitchen. Despite this knowledge, Lee did not shut off the gas supply until the further escape of the gas from the gas range could be prevented, but, on the contrary, continued to introduce the gas into the house of the plaintiffs until the last of the 50 gallons had been transferred from the tank truck to the storage tank. He then entered the kitchen with a flame in his hand to light the pilot light, and thus prevent any further escape of the gas, which he was employed to deliver. The explosion, fire, and consequent destruction of the property of the plaintiffs ensued.

Hence, it appears that the testimony is sufficient to warrant findings that Lee was negligent in the performance of the very mission assigned to him by the defendant; *i.e.,* the delivery of the gas; and that his negligence in this respect was the proximate cause of injury to the property of the plaintiffs. This being true, the compulsory nonsuits are

Reversed.

Stacy, C. J., took no part in the consideration or decision of this case.