W. J. CASADA v. D. P. FORD.

(Filed 3 June, 1925.)

**Negligence — Evidence — Questions for Jury—Instructions—Proximate Cause.**

Upon motion for nonsuit in an action for negligent injury to plaintiff's team of horses by defendant's driving his automobile into them on the street of a town: *Held*, evidence that the defendant negligently drove his automobile into the team and injured one of the horses, though lessened on cross-examination of the witness by his evidence tending to show he could not have seen the occurrence from his position on the wagon to which the team was hitched; and that the weight and credibility of the evidence are for the determination of the jury, with instructions upon the principles of proximate cause, and the motion was improperly allowed.

APPEAL by plaintiff from *McElroy, J.,* March Term, 1925, of BUNCOMBE.

The plaintiff alleges, in part: "That on or about the 28th day of July, 1923, while the plaintiff's wagon and team, composed of two horses, were standing on the side of the public highway in the village of Leicester, N. C., in said county, and in front of the store of one John Davis, the defendant, the said D. P. Ford, who was driving a heavy truck loaded with acid wood, came down said highway facing said team, driving in a negligent and unlawful manner, and unlawfully and negligently, without any fault on the part of the plaintiff, drove said truck into the team of the plaintiff, thereby injuring and damaging one of the horses to such an extent that said horse was rendered absolutely worthless, and it was necessary for him to be killed on said date."

The material allegations were denied by defendant. The defendant sets up contributory negligence as a defense, and for a further answer alleges: "That on or about the 28th day of July, 1923, the plaintiff negligently placed his team in the public thoroughfare leading through the town of Leicester, and on the wrong side of said thoroughfare, in close proximity to the center of said thoroughfare, without any proper driver or person to look after the said team, and without any caution on his part to take care of his said team, and while this defendant was passing over said highway, at a point where plaintiff's team was standing, which said team at said time showed no signs of being frightened or indication that it would shy at an approaching car or truck, and while this defendant was driving his truck at an exceedingly slow rate of speed, one of said horses, negligently left unattended by the plaintiff and standing in the said highway, for some unknown cause, without any notice to this defendant, whirled, twisted, or kicked his right leg, and the same became caught or came in contact with defendant's

loaded truck, and if the said horse was injured, it was no fault upon
the part of this defendant, but was due to the reckless, wrongful, and
negligent conduct of the plaintiff. That if the said horse was injured,
the same was of very little, if any, value, as this defendant is advised
and believes. That this defendant avers that if the plaintiff has been
injured, the same was due to the wrongful and negligent conduct of the
plaintiff, and due to the contributory negligence of the plaintiff, as
herein set out."

Arvill King, witness for plaintiff, testified on direct examination:
"My name is Arvill King, and I am 16 years of age. I was at
Leicester at the time Mr. Casada had his wagon there and Mr. Ford
was there in his truck. I was holding to Mr. Casada's wagon *when the
truck ran into the horse*. Mr. Ford ran his truck within about a foot
or fifteen inches of Mr. Casada's wagon—that is, the truck wheels were
in about a foot or fifteen inches of the wagon wheels. I did not see
the horse fall. I do not know the value of horses. The truck was
running about twelve miles an hour down grade. It was loaded with
acid wood and looked to have about two cords. *The horse moved his
head before the truck struck him, but he did not move his back part.*"

This testimony was weakened on cross-examination as to the position
in which King was sitting, indicating that he could not see the collision.
There was no evidence introduced by the defendant and none that the
injury was caused by the horse kicking.

At the close of plaintiff's evidence, defendant moved for judgment as
of nonsuit. The court entered judgment as of nonsuit as appears in the
record. Plaintiff excepted and assigned the following error and ap-
pealed to the Supreme Court:

"1. The ruling of the court in sustaining the motion of defendant for
judgment as of nonsuit.

"2. The judgment of the court nonsuiting the case as appears of
record."

*Bourne, Parker & Jones for plaintiff.*
*Wells, Blackstock & Taylor for defendant.*

CLARKSON, J. This was a judgment as of nonsuit. The evidence is
to be taken in the light most favorable to plaintiff, and he is entitled
to the benefit of every reasonable intendment upon the evidence and
every reasonable inference to be drawn therefrom. *Davis v. Long, ante,*
131, and cases cited.

Plaintiff left his wagon and team of two horses in front of Davis'
store in the village of Leicester. One of the horses and two wheels of
the wagon, front and rear, were off the pavement. On direct examina-
tion, Arvill King, witness for plaintiff, testified: "I was holding to

CASADA v. FORD.

Mr. Casada's wagon *when the truck ran into the horse.* . . . The horse moved his head before the truck struck him, *but he did not move his back part."* Defendant, who was driving the truck, approached facing the team. King's testimony on cross-examination was weakened as to whether he could see the collision from where he was sitting. This did not have the effect of withdrawing the case from the jury. *In re Fuller et al., ante,* 512, and cases cited. We think that the evidence was sufficient to be submitted to the jury. The facts can be shown by circumstantial as well as direct evidence. The probative force was for the jury and not the court. The jury must determine the facts when the case comes on again for trial, under proper instructions from the court below. From the complaint, the actionable negligence charged is in many respects similar to the famous *Donkey case,* known in every jurisdiction subject to Anglo-American jurisprudence.

In *Davies v. Mann,* Vol. 10, M. & W. Reports, p. 546, it was said: "At the trial before *Erskine, J.* (son of the Lord Chancellor), it appeared that the plaintiff, having fettered the forefeet of an ass belonging to him, turned it into a public highway, and at the time in question the ass was grazing on the off-side of a road about eight yards wide, when the defendant's wagon, with a team of three horses, coming down a slight descent, at what the witness termed a smartish pace, ran against the ass, knocked it down, and, the wheels passing over it, it died soon after. The ass was fettered at the time, and it was proved that the driver of the wagon was some little distance behind the horses. The learned judge told the jury that, though the act of the plaintiff, in leaving the donkey on the highway so fettered as to prevent his getting out of the way of carriages traveling along it, might be illegal, still, if the proximate cause of the injury was attributable to the want of proper conduct on the part of the driver of the wagon, the action was maintainable against the defendant; and his Lordship directed them, if they thought that the accident might have been avoided by the exercise of ordinary care on the part of the driver, to find for the plaintiff." Lord Erskine's position was held to be "perfectly correct" by *Parke, B.,* all the judges concurring. This case has been approved in *Gunter v. Wicker,* 85 N. C., p. 310; cited in 55 L. R. A., 454. See *Norman v. R. R.,* 167 N. C., p. 533; *Moore v. R. R.,* 185 N. C., 189.

In *Hinnant v. Power Co.,* 187 N. C., p. 297, it was said: "The principle of *Davies v. Mann,* 10 M. & W., 546, and that line of cases cited by defendant's counsel, cannot be applied to this case. The common law as to 'common carriers' has been changed by statute."

We think there was error in the judgment as of nonsuit.

Reversed.