DORA G. NEWBERN, ADMINISTRATRIX OF W. B. NEWBERN, DECEASED, v. J. CLARENCE LEARY AND R. W. LEARY, JR., INDIVIDUALLY, AND TRADING AS LEARY BROS. STORAGE COMPANY.

(Filed 1 March, 1939.)

1. Trial § 22b—

Upon a motion to nonsuit, the evidence tending to support plaintiff's cause of action is to be considered in its most favorable light for plaintiff, and she is entitled to every reasonable intendment thereon and every reasonable inference therefrom.   C. S., 567.

2. Automobiles §§ 18a, 18g—Evidence held for jury on issue of negligence on part of driver colliding with car backing on highway.

The driver of the car in which plaintiff's intestate was riding had stopped the car some 50 yards beyond the convergence of two highways, with the right wheels of the car some two feet off the hardsurface on the

right side of the highway, and had prepared to back the car, or had put the car in motion backwards at a speed of 5 or 10 miles per hour, in order to go back to a highway sign it had just passed, when defendant's truck with trailer, approaching from the rear, struck the car. The evidence tended to show that the truck and trailer were unloaded, that such vehicle traveling at a speed of twenty-five miles per hour could have been stopped in approximately twenty-five feet after the brakes were applied, that there were two filling stations at the convergence of the highways with lights that lighted the highway to where the car had stopped, and that the highway along which the truck was traveling was straight for about half a mile, that the car had both rear and front lights burning as required by ordinance, and that the truck was traveling at a speed of 35 or 40 miles per hour, that the driver of the truck did not slacken its speed or turn it to the left, but crashed into the back of the car with great violence, knocking the car about 84 feet down the highway. *Held:* The evidence is sufficient to be submitted to the jury on the issue of negligence. Michie's N. C. Code, 1937 Supp., 2621 (287), (288), (273), (280) (a).

**3. Automobiles §§ 8, 18h—**

Charge in regard to standard of care required of defendant when faced with sudden emergency in instruction on issue of negligence *held* favorable rather than prejudicial to defendants upon the evidence in this case.

**4. Automobiles §§ 13, 18c—Evidence of contributory negligence in stopping without observing statutory provisions held properly submitted to jury.**

Plaintiff's evidence was to the effect that the driver of the car in which intestate was riding looked back before stopping the car on the highway with its right wheels some two feet off the hardsurface on the right side of the highway, that both his rear and front lights were burning, and that he saw no vehicle behind him although the highway was straight for about a half mile, that he gave the statutory signal before stopping, that several minutes after he had stopped, and while he was preparing to back his car, or had just put the car in motion backwards, the car was struck from behind by defendant's truck. Defendants contended that the driver of the car violated the statutory provisions applicable, 1937 Supp. to Michie's Code, 2621 (287), (301) (a), (278), (293). *Held:* The evidence was properly submitted to the jury on the issue of contributory negligence under a charge, to which there was no exception, placing the burden of the issue on defendants, and instructing the jury that a violation of the statutes by defendants' driver would constitute negligence *per se*, and if they found from the greater weight of the evidence that such violation was a proximate cause of the injury, to answer the issue in the affirmative.

**5. Automobiles § 18a—Evidence held to support the submission of the issue of last clear chance.**

The evidence tended to show that the driver of the car in which plaintiff's intestate was riding stopped the car on the highway with its right wheels some two feet off the hardsurface on the right side of the highway, and had put the car in motion backwards at a slow speed when defendants' truck, approaching the car from the rear, collided with the car with great violence. The driver of defendants' truck testified that he saw the

car backing on the highway at a point variously estimated by the witnesses at from 50 to 100 yards from the car. *Held:* The evidence discloses that the driver of the truck was fully conscious of the peril, and had 50 to 100 yards in which to stop the truck or turn it to the left and avoid the accident, and the evidence is therefore plenary to support the submission to the jury of the issue of the last clear chance.

**6. Automobiles § 13—It is not negligence per se to back an automobile on the highway.**

It is not negligence *per se* to back an automobile on the highway, such action not being prohibited by statute nor by any principle of the law of negligence, and such action being habitual in parking cars in towns and cities and in returning to a point inadvertently passed on the highway, and in backing, it is common practice to use the side of the highway the driver is required to use in going forward.

**7. Trial § 24—**

If reasonable men can draw different conclusions from the evidence, the issue must be submitted to the jury.

**8. Negligence § 10—Application of doctrine of last clear chance.**

The doctrine of last clear chance is the humane rule of law that imposes upon a person the duty to exercise ordinary or due care to avoid injury to another who has negligently placed himself in a situation of danger, and who he can reasonably apprehend is unconscious thereof or is unable to avoid the danger.

**9. Automobiles § 9—**

A motorist is required, in the exercise of due care, to keep a proper lookout to see and avoid pedestrians and vehicles on the highway.

APPEAL by defendants from *Thompson, J.,* at November Term, 1938, of PASQUOTANK. No error.

This is an action for actionable negligence brought by plaintiff against the defendants. The allegations of the complaint, in part, are as follows: "That on or about the 18th day of March, 1938, plaintiff's intestate was riding in a certain Plymouth automobile which was then and there being carefully and prudently driven along the public highway in Bertie County on the road leading from Windsor to Edenton, said plaintiff's intestate being then on his way to his home in Elizabeth City; that the car in which plaintiff's intestate was riding had passed the intersection of N. C. Highway No. 30 with N. C. Highway No. 35, and had gone to the east of said intersection of said highway where it stopped preparatory to backing up to a filling station a short distance to the rear, leaving a clear and unobstructed space of twelve feet or more of the concrete portion of said highway on his left; that, while at this point, a motor truck owned by defendants and operated by one Elton Holley, their employee, then and there acting in the scope of his employment, approached from the west at a high, rapid and dangerous

rate of speed, and crashed into the car in which plaintiff's intestate was riding, practically demolishing the same, seriously injuring the driver thereof, and inflicting serious and painful bodily injuries upon plaintiff's intestate, which resulted in his death within a short time thereafter. That the car in which plaintiff's intestate was riding was being driven on the right side of the said State Highway No. 30, and that the truck and trailer of the defendants, which were then being used in their business, were carelessly and negligently driven in that the driver of the truck towing said trailer was an inexperienced and incompetent one, and in that the said truck and trailer were being moved at a high, dangerous and rapid rate of speed, and in that no lookout was kept upon the said road for traffic moving thereon, and in that the truck was not equipped with proper headlights, and in that the driver of said truck did not have the same under control, and in that the driver of defendants' truck did not operate the same with due care for the safety of pedestrians and vehicles using the highway, and in that he failed to turn out and pass the car in which plaintiff's intestate was riding, when by exercise of reasonable diligence, he could have easily done so, and in that the defendants' truck and trailer were not equipped with proper and sufficient brakes, by reason of which negligence, the death of plaintiff's intestate was proximately caused." Allegation and prayer for damage.

The defendants denied the material allegations of the complaint and set up the plea of contributory negligence.

The plaintiff in reply said: "It is further expressly denied that plaintiff's intestate was guilty of any negligent act, or omission to act, causing or contributing to his injury and death, as alleged in the answer. And, in this connection, plaintiff further avers that, even had her intestate been guilty of negligence, causing or contributing to his injury or death, as alleged in the answer, which is again denied, the defendants yet, by the exercise of due care, to wit: by refraining from the negligent act and omissions alleged in the complaint, could easily and readily have avoided the injury and death of her intestate—that is to say that, notwithstanding the negligence, if any, on the part of her intestate, which is again denied, the defendants yet had the last clear chance to avoid and by the exercise of ordinary diligence could have avoided his injury and death."

The evidence of plaintiff, in part, was as follows:

Junius Best, a colored boy (having license to drive), about 17 years old at the time, was driving for plaintiff's intestate, who was killed, testified, in part: "I know where there is a filling station on that road between Edenton and Windsor known as 'Mid-Way.' We passed there

just about 7:30 on our trip to Elizabeth City. I was driving at that time. Mr. Newbern was in the car with me; he was sitting beside me—in the front seat. As I was going by the filling station, it was lit up, and two forks come out—of the road—he had not been long woke up—he had been asleep, and he told me to stop to let him see where we were. I was never on the road and I stopped on the road, and looked back. I looked back and started to back and when I started to back this truck was right on the back of me. Before I stopped I had gone on by the filling station. Before I started to back I looked back in the direction from which I had just come. I couldn't see anything. That road, leading both west and east of that filling station, is straight. I would say it is straight on each side of that filling station for about half a mile. I do not know where I had gotten on the highway before I stopped—that is, east of the filling station. I was around 200 feet down the highway from the filling station. I remember a highway sign on the right, on the side of the road, with a number on it. I was right at that sign. . . . I was on the right-hand side of the highway when I drove down the road and made this stop. I was about two feet off the concrete—the right-hand wheels. The rear lights on my car were burning. I know that because we had stopped to get some gas and I looked at my lights. I got the gas between Wilson and Raleigh—on the same afternoon. I had two good front lights. (By the Court: How many rear lights were on that car? Ans.: One.) I had not quite started to back my car at the time the truck struck me; just started to release my clutch. I didn't see that car any more after that collision. At the time I drove up there and stopped there was no car meeting me, coming from the direction of the Chowan River Bridge. No car came from that direction at any time before I was struck; I didn't see one. I don't know exactly how wide the road is along there. . . . When I drove up near that highway sign I gave a signal of stopping—hand down. . . . I held my hand down as a signal in this angle (indicating), then I stopped. Then I looked back down the highway toward the filling station, before I started backing. There was no car between me and the filling station that I could see; and I could see that filling station clearly. After I had started to back I was struck by the truck. . . . I didn't see any car on the road that went out north from this highway. There was no car on the road between me and the filling station when I looked back. It was about two or three minutes from the time I stopped my car and started to back before I was hit."

Mr. Dennis Cobb, who saw the collision, testified, in part: "I was maybe 10 or 15 steps from the highway. I saw the car that was struck first. I was about half way of that approach when I first saw the car,

something like that. I was running along right slow; had just about stopped when the truck hit the car. The car came up there and came to a stop and started to back up a little. I imagine it came to a stop close to 50 yards from the filling station. It was on the right-hand side of the road. I noticed it had lights. I saw the car it was approaching and passing the highway I was on. I saw the rear light. After the car came to a stop it was in a position when I could see its rear light. After the car stopped it started to back up a little. I first saw the truck about the time the car had stopped and started to back and I glanced back behind the car that was hit and looked back up to see if anything else was coming down the road. The truck was coming from towards Windsor—from the west, going east. The car in which Mr. Newbern was riding had stopped on the Edenton side of the filling station. I was facing towards Edenton. My front was facing the car that was going toward Edenton. After the car had stopped I looked back and saw the truck. The truck had a trailer. I should say the truck was doing better than 35; around 40, the best of my estimation. The truck struck the car. I could not see any change in the speed of the truck from the time I first saw it until it struck the car. I could not see that it made any effort to turn to the left. I would say it was around a minute after the automobile in which Mr. Newbern was riding stopped before the truck struck it. I was facing sort of slantingly in the direction of Edenton—that is, towards the car that is stopped. No car was coming down the road from the direction of Edenton at the time, or before this collision. I went to the car after the collision. The truck hit the car, and it kind of got on top of the back wheels of the car and mashed the whole back end of the car in. . . . When the truck struck the car it knocked it straight on down the road about 28 steps. I didn't step it off—I saw it stepped off . . . There are two filling stations there, one on each side. They are pretty brightly lit up and were brightly lit up that night, both inside and out. In my best judgment the car stopped about 50 yards east of the crossing. It was somewhat over 50 yards between the place where the car was stopped and the filling stations. The lights of those filling stations were bright enough so anybody could see easily anything between the place where the car stopped and the filling station. . . . About a minute before, the truck struck this car, the car had stopped, and after it had stopped it had started backing, and had backed about 10 or 15 feet. It was coming back slow, 5 or 10 miles an hour; just about as slow as a car could go and be in motion. Going at that rate of speed, in my opinion, a car could have been stopped pretty near instantly, 5 or 10 feet."

Mr. C. S. Pritchard testified, in part: "I have had about seven years experience in driving trucks. From my experience, it would take approximately 25 feet for a ton and a half truck, with no load in the truck, and a semi-trailer, with no load in there, traveling at 25 miles an hour, to stop when the brakes were applied."

The issues submitted to the jury and their answers thereto, were as follows:

"1. Was the plaintiff's intestate injured and killed by the negligence of the defendants as alleged in the complaint? Ans.: 'Yes.'

"2. Did plaintiff's intestate, by his own negligence, contribute to his injury and death as alleged in the answer? Ans.: 'Yes.'

"3. Notwithstanding plaintiff's own contributory negligence, if any, could the defendants, through the exercise of due care, have avoided the injury and death of plaintiff's intestate, as alleged in the complaint? Ans.: 'Yes.'

"4. What damages, if any, is plaintiff entitled to recover? Ans.: '$12,500.00.' "

The court below rendered judgment on the verdict. The defendants excepted and assigned error to the submission of the issues and submitted other issues, and to the refusal of the court below to give the following instruction: "Defendants pray that the court will instruct the jury that if they believe the evidence and find the facts to be as testified to by all the witnesses, they will answer the second issue 'Yes' and the third issue 'No.' "

The defendants made numerous exceptions and assignments of error and appealed to the Supreme Court. The material ones and necessary facts will be considered in the opinion.

*M. B. Simpson, R. Clarence Dozier, and McMullan & McMullan for plaintiff.*

*J. M. Broughton and W. D. Pruden for defendants.*

CLARKSON, J. At the close of plaintiff's evidence and at the conclusion of all the evidence, the defendants in the court below made motions for judgment as in case of nonsuit. C. S., 567. The court below refused the motions and in this we can see no error.

The evidence which makes for plaintiff's claim, or tends to support her cause of action, is to be taken in its most favorable light for plaintiff, and she is entitled to the benefit of every reasonable intendment upon the evidence, and every reasonable inference to be drawn therefrom. We see no error in the court's refusal to give defendants' prayer for instruction.

*First issue:* As to the negligence of defendants. Plaintiff's evidence principally from a disinterested witness, Dennis Cobb, was to the effect that defendants' driver was driving the truck with trailer, the truck was going "better than 35; around 40, the best of my estimation." It was in evidence that the road was straight for about a half mile. The truck struck the Plymouth automobile which plaintiff's intestate's driver was driving, in the rear. The automobile had on it the rear lights required by the statute. The speed of the truck did not change, the impact was with such force that "it kind of got up on top of the back wheels of the car and mashed the whole back end of the car in. . . . When the truck struck the car it knocked it straight on down the road about 28 steps" (about 84 feet). The driver of the truck made no effort to turn to the left. "No car (in the opposite direction) was coming down the road from the direction of Edenton at the time or before the collision." The defendant's death car struck plaintiff's intestate's car some 50 yards or more below two brightly-lighted filling stations—one on each side of the road. "After the car had stopped I looked back and saw the truck. The truck had a trailer. . . . I could not see any change in the speed of the truck from the time I first saw it until it struck the car." Defendants' driver testified that he was running about 25 miles an hour. The type of truck and semi-trailer that he was driving, with no load, could be stopped within approximately 25 feet.

N. C. Code 1935 (Michie), section 2621 (45), 1937 Suppl., sec. 2621 (287), is as follows: "Any person who drives any vehicle upon a highway carelessly and heedlessly in willful or wanton disregard of the rights or safety of others, or without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property, shall be guilty of reckless driving and upon conviction shall be punished as provided in sec. 2621 (102)."

Section 2621 (46); 1937 Suppl., sec. 2621 (288): "(a) No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions then existing . . . 3. Thirty-five miles per hour for motor vehicles designed, equipped for, or engaged in transporting property, and thirty miles per hour for such vehicle to which a trailer is attached."

1937 Suppl., sec. 2621 (273), "Brakes": "(a) Every motor vehicle when operated upon a highway shall be equipped with brakes adequate to control the movement of and to stop such vehicle or vehicles, and such brakes shall be maintained in good working order and shall conform to regulations provided in this section."

---

NEWBERN v. LEARY.

---

N. C. Code, *supra,* sec. 2621 (91); 1937 Suppl., sec. 2621 (280): "(a) The head lamps of any motor vehicle shall be so constructed, arranged and adjusted that, except as provided in subsection (c) of this section, they will at all times mentioned in sec. 2621 (89) and under normal atmospheric conditions and on a level road produce a driving light sufficient to render clearly discernible a person two hundred feet ahead, but shall not project a glaring or dazzling light to persons in front of such head lamp, etc."

From the charge of the court below on this aspect no exception is taken except to the last portion (which is not considered in defendants' brief), as follows: "They say and contend, further, gentlemen of the jury, that their driver was confronted by a sudden emergency which was caused, as they say, and contend, by the negligence of Mr. Newbern's driver, and that in such case the law does not hold a man, and did not hold their driver, to as high a standard of care as in other cases, and the court charges you that is so, that that is the law in this State. That if the defendants' driver, on this occasion, was confronted by a sudden emergency, which was caused by the negligence of the plaintiff's driver, then our law does not hold the defendants' driver to such a high standard of care as it would in other cases. And so they say and contend that upon the evidence in this case it is your duty to answer that first issue 'No.'" We think the charge complained of, on the evidence, favorable to defendants. *Poplin v. Adickes,* 203 N. C., 726.

In *Powers v. Sternberg,* 213 N. C., 41 (43) is the following: "There are a few physical facts which speak louder than some of the witnesses. The force with which the Bedenbaugh car ran into the truck, with its attendant destruction and death, establishes the negligence of the driver of the car as the proximate cause of the injury," citing authorities.

*Second issue:* As to the contributory negligence of plaintiff's intestate. Plaintiff's evidence on this aspect is to the effect that the deceased W. B. Newbern asked his driver, Junius Best, to stop, after they had passed the forks of the road. He had been asleep and had just awakened and asked the driver to stop and let him see where they were. The driver stopped. "I held my hand down as a signal in this angle (indicating), (1937 Suppl., *supra,* sec. 2621 [301], [b]), then I stopped." The driver testified that he looked back in the direction from which he had come and could not see anything, so started to back. The road was straight for a half mile. He was on the right-hand side of the road, the right-hand wheel about two feet off the concrete when he stopped. The rear lights were burning. "I had not quite started to back my car at the time the truck struck me, just started to release my clutch." There was no car meeting the driver of the truck coming from the

direction of (Edenton) the Chowan Bridge. "I was around 200 feet down the highway from the filling station." "I gave the signal to stop and looked back. There was no car between me and the filling station when I looked back. It was about two or three minutes from the time I stopped my car and started to back before I was hit." The two filling stations, one on each side of the road, were brightly lighted.

Dennis Cobb testified that the driver of the car had backed 10 or 15 feet and was coming back "just about as slow as a car could go and be in motion." The car could have been stopped "pretty near instantly, 5 or 10 feet."

The defendants contended that the plaintiff's intestate's driver was violating the following motor vehicle laws of our State: N. C. Code, sec. 2621 (45); 1937 Suppl., sec. 2621 (287), *supra.*

1937 Suppl., *supra,* sec. 2621 (301): "(a) The driver of any vehicle upon a highway before starting, stopping or turning from a direct line shall first see that such movement can be made in safety, and if any pedestrian may be affected by such movement shall give a clearly audible signal by sounding the horn, and whenever the operation of any other vehicle may be affected by such movement shall give a signal as required in this section, plainly visible to the driver of such other vehicle, of the intention to make such movement. (b) . . . Whenever the signal is given the driver shall indicate his intention to start, stop, or turn by extending the hand and arm from and beyond the left side of the vehicle as hereinafter set forth. Left turn—hand and arm horizontal, forefinger pointing; Right turn—hand and arm pointed upward; Stop— hand and arm pointed downward. All signals to be given from left side of vehicle during last fifty feet traveled."

Section 2621 (278) provides, in part, that every motor vehicle shall carry at the rear a lamp of the type which has been approved by the Commission and which exhibits a red light, plainly visible, under normal atmospheric conditions, 500 feet to the rear of such vehicle.

Section 2621 (293) provides that upon all highways of sufficient width except one-way streets, the driver of a motor vehicle shall drive the same upon the right half of the highway, except when overtaking and passing another vehicle, subject to the limitations applicable as set forth in this statute.

The court below, on the aspect of contributory negligence, charged the jury: "The court charges you that if the defendants have satisfied you from the evidence, and by its greater weight, that on the occasion in question, the driver of the Newbern car, the one in which Mr. Newbern was riding at the time, violated any of these statutes, which they say and contend he violated, then by that violation, gentlemen of the

jury, he would be guilty of negligence *per se,* and if the defendants have further satisfied you from the evidence and by its greater weight that such negligence, in either of the aspects claimed and contended by them, was the proximate cause of the injury and death of W. B. Newbern, then, gentlemen of the jury, it would be your duty to answer this second issue 'Yes.' But, if the defendants have failed to so satisfy you from this evidence, and by its greater weight, that plaintiff's intestate's driver violated any one of these statutes, which they say and contend he violated, or if they have failed to satisfy you from the evidence and by its greater weight that such violation was the proximate cause, or one of the proximate causes of the injury and death of plaintiff's intestate, then, gentlemen of the jury, it would be your duty to answer that issue 'No.' Or, if the evidence, upon that issue, or either of the elements thereof, is equally balanced so that you cannot tell whether the defendants' evidence, or the plaintiff's evidence, outweighs, then it would be your duty to answer that issue, 'No.'" On this issue there is no exception made to the charge of the court below.

*Third issue:* As to the doctrine of last clear chance. We think the evidence plenary for the court below to have submitted this issue.

In Michie's "The Law of Automobiles in North Carolina," sec. 31, p. 73, it is said: "The essential principle underlying the doctrine is that, although the plaintiff has been negligent in exposing himself to peril, and although his negligence may have continued until the accident happened, he may nevertheless recover if the defendant, after knowing of plaintiff's danger and having reason to suppose that he may not save himself, could have avoided the injury by the exercise of ordinary care, and failed to do so, and *vice versa.* The party who last has a clear opportunity of avoiding the accident, notwithstanding the negligence of his opponent, is considered solely responsible. In such a case the contributory negligence of the plaintiff is not a defense or bar to a recovery by plaintiff."

In *Clark v. R. R.,* 109 N. C., 430 (449-450), we find: "It makes no difference how short an interval occurs between the negligent act of the plaintiff and that of the defendant, if the latter had time to discover the danger and avert it by the exercise of ordinary care. 4 Am. & Eng. Enc., p. 27; *Needham v. R. R., supra* (37 Cal., 407); *Trow v. R. R.,* 24 Vt., 494. . . . There are two divergent lines of authority upon this subject, but the position assumed by counsel for the defendant finds no support in the decisions of those courts that have, like this, adhered closely to the doctrine of *Davies v. Mann,* 10 M. & W., 545. The negligence of the plaintiff in our case consisted in going upon the trestle when an approaching train was in sight, as it could have been seen a

mile. But if, after he went upon the trestle, the defendant company's servant could, by proper watchfulness, have discovered his danger in time to avert it without jeopardy to the persons or property on defendant's train, and neglected to do so, the negligence of the two was not concurrent nor contemporaneous. That of the defendant was so far subsequent to the plaintiff's wrongful act as to give time to the servant of the former to have discovered the danger, and averted the injury by the proper use of the means at his command. 2 Thompson Neg., 1157; Wharton Neg., 343, 346, 388."

The case of *Sherlin v. R. R.*, 214 N. C., 221, is not contrary to the *Clark case, supra.* In that case, at p. 223, it is stated: "All the evidence shows that the intestate stepped upon the trestle when the train was approaching and undertook to run across before the train reached there, and failed. The evidence shows that the trestle was not of the open type in the reported case, but it was floored and surfaced with cleats. Outside the ends of the *crossties there was sufficient space for a person to walk or stand there in safety as the train passed."* (Italics ours.)

In *Pickett v. R. R.*, 117 N. C., 616 (637), we find: "If it is the settled law of North Carolina (as we have shown) that it is the duty of an engineer on a moving train to maintain a reasonably vigilant outlook along the track in his front, then the failure to do so is an omission of a legal duty. If by the performance of that duty an accident might have been averted, notwithstanding the previous negligence of another, then, under the doctrine of *Davies v. Mann* (10 M. & W. [Ex.], 545), and *Gunter v. Wicker* (85 N. C., 310), the breach of duty was the proximate cause of any injury growing out of such accident, and where it is a proximate cause the company is liable to respond in damages. Having adopted the principle that one whose duty it is to see does see, we must follow it to its logical results."

In *Norman v. R. R.*, 167 N. C., 533 (538-9), *Walker, J.,* for the Court, said: "If the motorman, W. N. Turner, saw the plaintiff's car on the western track in front of his car, which was on the same track, and also knew that plaintiff, being forgetful of his duty and inattentive to his surroundings, was not aware of the approach of the car, and, on that account, was making no effort to leave the track, and this knowledge came to him in time to prevent the collision, and he knew that a collision would occur if plaintiff did not leave the track in time to prevent it, unless the street car was itself stopped before reaching the automobile, it was his plain duty, according to our decisions, as soon as a collision became probable, to slow down and bring his car under control, so that he could stop, in order to prevent the catastrophe which would inevitably happen if he proceeded on his way and plaintiff did not move

his automobile away from the track. If the motorman saw that the plaintiff had evidently not looked and listened, and had not heeded his signal, if he gave one, and was, therefore, unconscious of his danger and not likely to leave the track, it was incumbent on him to take reasonable precaution for his safety; and as he had the better opportunity of so acting as to prevent the collision, he is adjudged by the law, under the circumstances, to have had the last clear chance of averting the injury, and the defendant, therefore, is the reasonable author of it. A person on foot or in a vehicle has no right to cross a street in front of an approaching street car and take the doubtful chance of his ability to cross in safety; if a prudent man would not do such a thing under similar circumstances; and if he does so, and is injured by his own carelessness, the fault is all his, and he cannot hold the company to any liability therefor. But the case we have is quite different, as here the plaintiff was seen by the conductor when backing, at a crossing, towards the western track on which the car was moving; he was oblivious of his dangerous surroundings, which might have been seen by the motorman, if he was keeping a proper lookout, and he testified that he was doing so. It would seem to be just and humane to hold that, if such were the situation, and the jury afterwards found it to be so, the defendant should be held responsible, as having the superior chance to avoid the injury, though the plaintiff was also negligent, and grossly so. Such, anyhow, is our law."

In *Caudle v. R. R.,* 202 N. C., 404 (407), is the following: "In *Redmon v. R. R.,* 195 N. C., at p. 766 (*Brogden, J.*), we find the following: 'The last clear chance doctrine is the duty imposed by the humanity of the law upon a party to exercise ordinary care in avoiding injury to another who has negligently placed himself in a situation of danger. The doctrine is said to have sprung from the celebrated case of *Davies v. Mann,* 10 M. & W., 546, decided in 1842, and commonly known as the hobbled ass case. An excerpt from that case is as follows: "The defendant has not denied that the ass was lawfully in the highway, and therefore we must assume it to have been lawfully there; but even were it otherwise, it would have made no difference, for as the defendant might, by proper care, have avoided injuring the animal, and did not, he is liable for the consequences of his negligence, though the animal may have been improperly there." *Deans v. R. R.,* 107 N. C., 686; *Casada v. Ford,* 189 N. C., 744; *Hudson v. R. R.,* 190 N. C., 116; *Hart v. R. R.,* 193 N. C., 317; *Buckner v. R. R.,* 194 N. C., 104; *Redmon v. R. R., supra* (at p. 769).' "

In *Morris v. Transportation Co.,* 208 N. C., 807 (811), speaking to the subject, we find: "The principle announced has been clearly stated

by *Stacy, J.,* in *Haynes v. R. R.,* 182 N. C., 679, 110 S. E., 56, as follows: 'It has been held uniformly with us that, notwithstanding the plaintiff's contributory negligence, if the jury should find from the evidence that the defendant, by the exercise of ordinary and reasonable care, could have avoided the injury, and failed to do so, and had the last clear chance to so avoid it, then the defendant would be liable in damages.' To the same effect is the utterance of *Brown, J.,* in *Cullifer v. R. R.,* 168 N. C., 309, 84 S. E., 400: 'It is well settled in this State that where the plaintiff is guilty of contributory negligence the defendant must exercise ordinary care and diligence to avoid the consequences of the plaintiff's negligence, and if by exercising due care and diligence the defendant can discover the situation of the plaintiff in time to avoid injury, the defendant is liable if it fails to do so.' *Gunter v. Wicker,* 85 N. C., 310; *Wheeler v. Gibbon,* 126 N. C., 811; *Ray v. R. R.,* 141 N. C., 84; *Casada v. Ford,* 189 N. C., 744; *Caudle v. R. R.,* 202 N. C., 404."

In *Arnold v. Owens,* 78 Fed. (2d), 495, 498, the Court said: "It is of course true that the plaintiff would not have been injured had she not been walking unlawfully on the wrong side of the road; but, even if this conduct be considered negligence *per se,* it does not follow that the truck driver could run her down with impunity, for, if he saw that she was in a position of danger, and by the exercise of ordinary care could have avoided the accident, it was his duty to do so. He had, in such event, 'the last clear chance,' and should have taken it. The Supreme Court approved this doctrine in the following language in *Grand Trunk Ry. Co. v. Ives,* 144 U. S., 408, 429, 12 S. Ct., 679, 687, 36 L. Ed., 485: 'Although the defendant's negligence may have been the primary cause of the injury complained of, yet an action for such injury cannot be maintained if the proximate and immediate cause of the injury can be traced to the want of ordinary care and caution in the person injured; subject to this qualification, which has grown up in recent years (having first been enunciated in *Davies v. Mann,* 10 M. & W., 546), that the contributory negligence of the party injured will not defeat the action if it be shown that the defendant might, by the exercise of reasonable care and prudence, have avoided the consequences of the injured party's negligence.'" And in the same case, at page 499, the Court said: "As a further qualification upon the driver's duty to look out for persons upon the road ahead of him, the defendant invokes the general rule that one is not under a duty of anticipating negligence on the part of others, and, in the absence of anything which should give notice to the contrary, he is entitled to act upon the assumption that others will exercise ordinary care for their own safety. *Shirley v.*

*Ayers,* 201 N. C., 51, 53, 54, 158 S. E., 840. So it is argued that the driver of the truck, even if he saw the plaintiff walking ahead of him on the shoulder of the road, was entitled to assume that she would turn aside to the right and reach a place of safety before the truck overtook her. But this statement of the situation ignores the important qualification in the rule that a person driving upon the highway has no right to persist in his right of way when he realizes that another person whom he is approaching or overtaking, cannot conform to the rule of the road or is unconscious of his danger. *Standard Oil Co. v. McDaniel,* 42 App. D. C., 19, 280 F., 993; Huddy, Encyc. of Auto Law, Vols. 3-4, sec. 116."

The testimony of the driver of defendants' truck was that he saw the car when he passed the Midway Filling Station, at which time he says it was backing. "I was a good little ways from it when I first saw it." He estimates this distance at 100 yards, while Dennis Cobb puts it close to 50 yards, and Junius Best at 200 feet. It thus appears that after observing the car in a slow backward motion, the driver of the truck had a distance of from 50 yards to 100 yards in which to swing his truck to the left side of the road, or to stop it by the due application of brakes. The truck driver (Holley) by his own evidence indicated that at the time he was fully conscious of the peril attending those riding in the car of plaintiff's intestate.

In *Smith v. Gould* (110 W. Va., 579), 92 A. L. R., p. 28, it is held (1st headnote) : "The last clear chance doctrine is properly extended to a case where an automobilist, by reason of failure by him in his plain duty to maintain a lookout for the persons and property of others on the highway, commensurate with the danger indicated by attendant facts and surrounding circumstances known to him, and which are such as to have put him on the alert, causes injury to another (though such other was himself concurrently negligent), where the peril could have been seen and comprehended by the automobilist and the injury avoided in the exercise of reasonable care commensurate with the situation. Such case constitutes an exception to the general rule which precludes recovery by a plaintiff whose negligence has concurred with the defendant's."

On this aspect the court below charged the jury, in which we see no error : "In order for this doctrine to be available to the plaintiff, upon whom is the burden of proof as to this issue, you must find from the evidence, the burden of proof being upon the plaintiff to satisfy you from the evidence, and by its greater weight, that her intestate, that is, that W. B. Newbern, and his car, on the occasion in question, was in obvious and imminent peril; also that the defendants' driver had ac-

tually discovered such peril prior to the collision, or by the exercise of ordinary care could have discovered it, and she must also satisfy you from the evidence, and by its greater weight, that her intestate, W. B. Newbern, and his employee, were totally unaware of the danger and were, therefore, unable to escape. And she must further satisfy you from the evidence and by its greater weight that defendants' driver had time in which, by the exercise of reasonable care, he could, by the use of the means at hand, having due regard to his own safety and the safety of others, have avoided the collision, if he discovered the peril that the plaintiff's intestate was in, or by the exercise of ordinary care could have discovered it. Now, gentlemen of the jury, if the plaintiff has satisfied you from the evidence, and by its greater weight, of the truth of each and every of those elements, that is of the existence of each and every of those elements, then, gentlemen of the jury, it would be your duty to answer this third issue, 'Yes.' But if the plaintiff has failed to so satisfy you of the existence of any one of those elements, or if the evidence in the case is equally balanced upon any one of those elements, then, gentlemen of the jury, it would be your duty to answer the third issue, 'No.' "

It is not negligence *per se* to back a car upon a highway. *Norman v. R. R.*, 167 N. C., 533; The Law of Automobiles, *supra*, sec. 73, p. 158, says: "The general rule is that the backing of vehicles on the highway is not prohibited by law." Such an act is not prohibited by statute nor in itself by any principle of the law of negligence. It is a matter of common observation that the practice is habitual amongst drivers of automobiles and other vehicles—in towns and cities for the purpose of backing into a selected parking place, and in sections more remote for the purpose of returning to a point inadvertently passed by. And it is equally the practice, in so doing, to use that side of the street or highway which the driver is required to use in going forward. In the instant case, the car was backing only to the highway sign almost opposite to where it stopped. It was moving "just about as slow as a car could go and be in motion," and could have been stopped almost instantly. It had backed only about ten to fifteen feet when it was hit by the truck. In the light of the evidence as to the speed and momentum of the truck, it is apparent that the car would have been hit just as hard, and with the same disastrous consequences, though it had not moved backward an inch from the point at which it had been halted.

It is well settled that when the facts are such that reasonable men may fairly differ upon the question involved in the issues, the determination of the matter is for the jury. If different men can draw different conclusions from the evidence, it is a question for the jury.

We think the charge on the question of damages is sustained by the decisions of this Court. The charge is full, clear and explicit on every aspect of the controversy, and on the record we see no reversible or prejudicial error. The exceptions and assignments of error made by the defendants cannot be sustained.

We think the evidence in this case fully warranted the Court below in submitting to the jury the issues of negligence, contributory negligence and the issue of last clear chance. It is said that the last clear chance doctrine is the duty imposed by the humanity of the law upon a party to exercise ordinary or due care to avoid injury to another who has negligently placed himself in a situation of danger.

In the judgment of the court below, we find

No error.