This is an action to recover damages because of injuries alleged to have been sustained through the joint negligence of the defendants.
The plaintiff, an employee of the Atlantic Yadkin Railway Company, and serving as a section laborer, complained that some time in July preceding the trial, and while in the performance of the duties imposed upon him by his employer, he was riding in defendant's motorcar, which was driven by one of its agents, and plaintiff's superior, at a rapid rate of speed along the railway near Summerfield, N.C. when suddenly and without any warning the motorcar of the defendant Western Union Telegraph Company, Inc., proceeding southwardly along the railway at a rapid rate of speed, collided head-on with the motorcar of its codefendant, which was carrying the plaintiff. The plaintiff alleges that in the emergency he was required to jump from the speeding motorcar to a place of safety and, in so doing, suffered serious and permanent injuries.
The negligence attributed to the defendant Atlantic Yadkin Railway Company was (a) that it did not have its motorcar equipped with adequate brakes, in proper condition, and sufficient to stop the car in case of emergency; (b) that the car itself was old, worn out, with *Page 739 
defective brakes, and other defective equipment, and could not be stopped in an emergency within a reasonable distance, which was known to defendant, or could have been known to it by the exercise of reasonable care and inspection; (c) that the company's motorman in charge of the car was operating the same at an unreasonable and improper rate of speed under the circumstances, and in a manner so as to endanger the life and limb of the passengers on the car, including plaintiff, and that said motorman knew, or could have known by the exercise of ordinary care, the defective condition of the brakes in the car; and that the motorman failed to keep a proper lookout; (d) that the defendant Atlantic Yadkin Railway Company, the employer, failed to exercise reasonable care to provide the plaintiff a reasonably safe place in which to work and reasonably safe tools and appliances.
Of the defendant Western Union Telegraph Company, Inc., it is alleged, (e) that said defendant, through its motorman, acting within the scope of his employment, drove its motorcar along the railway of its codefendant in a careless and negligent manner and at such a speed as to endanger the life and limb of the plaintiff and others on the railway's motorcar; (f) that the defendant Western Union Telegraph Company, Inc., through its motorman in charge of said car, failed to give any timely warning of its approach and that after the oncoming car of the Atlantic Yadkin Railway Company had been discovered, or could by the exercise of ordinary care have been discovered approaching and its position of peril known, that the defendant Western Union Telegraph Company, through its servant and agent, failed to exercise due care to avoid a collision, although it had a last clear chance to do so, and that the motorman, the servant and agent of the defendant, proceeded without applying any brakes to the car, or if they were applied they were inadequate to stop the car and prevent a collision; and that the car was old, defective, and out of date; (g) that the motorman failed to keep a proper lookout for traffic on the railway and negligently and recklessly drove his car head-on into the motorcar on which plaintiff was riding.
In all of these acts the plaintiff alleged that the defendants were concurrently negligent.
The defendants denied the material allegations of the complaint, and the defendant Atlantic Yadkin Railway Company set up as a special defense a release alleged to have been obtained by the defendant from the plaintiff; and the Western Union Telegraph Company, Inc., claimed the benefit of this release because of the release of its joint tort-feasor and because of a subsequent release taken by the defendant Atlantic Yadkin Railway in behalf of itself and the Telegraph Company.
The plaintiff replied to this further defense, alleging that the releases relied on by the defendants were procured through fraud and misrepresentation, *Page 740 
were wholly inadequate as a settlement for the injuries sustained by plaintiff, were without any adequate consideration, inoperative and void.
Plaintiff's evidence, summarized, is to the effect that he had been working for the Atlantic Yadkin Railway Company about 37 years when he sustained the injury complained of. He was a section worker, engaged in such work as putting in crossties, pulling road joints, and putting in switches and broken rails, making a wage of $2.03 a day.
On the day of his injury he went to work at 7:30 o'clock. He went from the tool house to his work on a motorcar, which he described as something like a hand car with a gasoline motor in it. The passengers, or workers, sat on boards which ran each side the length of the car.
Captain Tilley, described as plaintiff's "boss," was driving the motorcar on the day plaintiff got hurt. Plaintiff and his colaborers were working about four miles from Summerfield. They got on the motorcar after it was loaded up and started down the hill toward Summerfield. Suddenly Tilley put on his brake and said: "Look out yonder, boys, yonder comes the other fellow; they are going to hit." Tilley jammed on the brakes but it did not have much effect and everybody got to jumping. Plaintiff states that the car ran about 200 yards and they hit together. Plaintiff lay down on the ground when it happened. Plaintiff further testified that the car was running about twenty miles an hour when Tilley said "Look out," and plaintiff saw the Western Union car coming. All tried to get off, including Captain Tilley. Captain Tilley said, "Boys, jump." The other motorcar was coming right around the curve, plaintiff didn't know exactly how far. Plaintiff said they had not seen the Western Union car approaching until Captain Tilley said, "Look out, boys, jump." The Western Union car, plaintiff testified, was going faster than the car he was on. The motorcar that hit the Western Union car kept "backing it up." Plaintiff states that he was unconscious.
Plaintiff's testimony tended to show that he was badly hurt. The transverse processes of the first lumbar vertebra were broken, there was a fracture of the fourth and fifth lumbar vertebrae. The posterior arches of the fourth and fifth lumbar vertebrae were broken on each side and the front of the fifth vertebra seemed slightly broken. There was trouble also with the sacroiliac, that is, the joint in the small of the back where the spine joins the pelvis. There was injury also to the left knee.
Other testimony corroborated the plaintiff as to the order to get off the car, and tended to show that at that time the cars were about thirty-five or forty feet apart.
With regard to the release, the plaintiff testified that he went to the office of the Atlantic Yadkin Railway Company for the purpose of *Page 741 
obtaining a pass and to receive compensation for the time he was kept from work. He said that Mr. Brown, who had this matter in charge for the Railway Company, told him to come next day and he would let him have all the money he needed. He went back the next morning about ten o'clock and stayed there until Mr. Faulconer came with "them papers there fixed up `by times,' $176.14." He stated that the draft and release which had been identified and which was for $176.14 he thought was for his time, that he was getting $2.03 a day when he was hurt, and they counted up how long he had been off. He thought when Mr. Faulconer gave him the $176.14 he was paying him for the time he had lost from work, that he knew he asked Mr. Faulconer for his time but did not remember Mr. Faulconer telling him he was giving him his time. That Mr. Faulconer had told him that it was for his time. He stated that he said to Mr. Faulconer: "Mr. Faulconer, how much is this? I cannot see it," and Mr. Faulconer said: "John, it is $176.14." While going down in the elevator a man standing in the elevator said: "John, what is that paper in your hand?" and he replied, "A paper." "Captain, how much is that?" And the man said: "$176.14," and plaintiff said, "Thank you." He stated that he did not know the man but that people call all colored folks "John."
The plaintiff testified that on previous occasions he had taken papers home with him; that he had always signed for previous accidents the same kind of instrument he signed then, but on those occasions someone had read them to him; that he did not know anything about the paying of the hospital bill, as they did not ask him. That Mr. Faulconer said to him: "Here is your time, $176.14," and that he went to Summerfield and got the money. That he got the $176.14 that Mr. Faulconer promised to give him for his time and took it and spent it.
As to the second release, the plaintiff testified that he went to the office to get a pass and that he signed the second release believing that it was an application for the pass; that he did not read the pass request. He denied that Mr. Brown read the paper to him. He stated that he did not have his glasses with him but had his sister's glasses, which were no good and that he could not see out of them enough to read, that he could read the paper and short words but long words like that he couldn't do anything with them; that none of the papers he signed were read over to him; that Mr. Faulconer did not tell him the paper he was signing was a release nor that he was making full settlement for all his injuries, nor did they give him any of the papers that he had signed to take home with him.
The defendants placed the releases in evidence and introduced testimony tending to contradict the plaintiff with respect to his allegations and testimony as to the fraud. *Page 742 
At the conclusion of the plaintiff's evidence and also at the conclusion of all the evidence the defendants separately made motions for judgment as of nonsuit, which were denied.
There was evidence to the effect that plaintiff left the office with the voucher-release and went to the bank, and that in order to get the money he had to sign again, twice, which he did.
There were four issues submitted to the jury; the first two were issues as to fraud covering the first and second releases above referred to, the third was as to the negligence of the defendants, and the fourth as to damages. All of the issues were answered in favor of the plaintiff, and upon the verdict thus rendered judgment was rendered against the defendants in the sum of $7,693.72, from which defendants appealed, assigning errors.
We see no evidence in the record under which the defendant Western Union Telegraph Company, Inc., might be held for negligence, and the motion of this defendant for judgment as of nonsuit should have been allowed.
The defendant Atlantic Yadkin Railway Company offered certain documents appearing to have been releases previously signed by plaintiff for other injuries, explaining that in offering them it was to show that the "plaintiff had had such papers as this before," which defendant claimed might have a bearing on the fact of his knowledge of what the papers or releases in controversy were. This evidence was excluded by the court as irrelevant, and in this we find no error.
As to this defendant, the evidence was sufficient to go to the jury in support of the contentions of the plaintiff, and its motion for judgment as of nonsuit was properly overruled.
The other exceptions relate to instructions to the jury. Most of them appear to have been taken on the principle that defendant was prejudiced by the extent to which the court dwelt upon the contentions of the plaintiff. An examination of the entire charge leaves us with the impression that the defendant was not discriminated against in such a manner as to create prejudice in the minds of the jury upon the pertinent issues. There was certainly not a sufficient discrimination as to relieve the defendant from the duty of calling to the court's attention such contentions as may have been inadvertently omitted. Sorrells v. *Page 743 Decker, 212 N.C. 251, 193 S.E. 14; S. v. Sinodis, 189 N.C. 565,127 S.E. 601. The defendant Atlantic Yadkin Railway Company did call to the attention of the court its contentions as to the first release, which had been taken out of the office, and the court, thereupon, called the jury's attention to that. The objection here is that the court did not state to the jury the contention of the defendant as to the effect this might have on the charge of deception and fraud. But we see no reversible error in the manner in which it was presented to the jury.
It is not our function, and certainly not that of the trial judge, to pass upon the weight of the evidence. When there is any evidence to support plaintiff's case, it must be submitted to the jury. Lumber Co. v. PowerCo., 206 N.C. 515, 174 S.E. 427; Newbern v. Leary, 215 N.C. 134; Foxv. Army Stores, 215 N.C. 187. Try as he may, the trial judge in his instructions to the jury may not always be so fortunate as to maintain a strictly even balance in the statement of the contentions. In that respect, however, we find no substantial and reversible error in the present case.
On the appeal of the defendant Western Union Telegraph Company, Inc., the judgment below denying the motion for judgment as of nonsuit is
Reversed.
On the appeal of the defendant Atlantic Yadkin Railway Company, we find
No error.